**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| CECELIA ROBERTS WEBB, *et al.*, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:16-cv-1703-CDP |
| THE CITY OF MAPLEWOOD, MISSOURI, | ) ) | |
| Defendant. | ) ) | |

## <u>PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

The City of Maplewood (the "City") mischaracterizes Plaintiffs' factual allegations and raises facts outside of the pleadings in hopes of distracting the Court and placing blame solely on the "Maplewood Municipal Court and its judicial, quasi-judicial, and governmental officers" as individuals whom the City argues are immune from civil suits for damages. Contrary to the City's arguments, however, Plaintiffs have properly alleged that the *City*, through widespread policies and practices, created a sophisticated, unconstitutional mechanism to raise City revenue by ticketing, jailing, extorting, and alienating Plaintiffs and the similarly-situated individuals Plaintiffs seek to represent. Plaintiffs do not allege that individual City employees took rogue unconstitutional actions, do not seek to hold any individual city employee liable, and do not seek injunctive or monetary relief against any individual employee or City department. The City's distortion of the facts and fundamental misunderstanding of the law cannot defeat Plaintiffs' claims at this stage.

Plaintiffs allege that the City—through its officials, police department, prosecutors, court employees, and agents—generates revenue and subverts the Constitution by caging Plaintiffs and

others like them, forcing them to purchase their freedom from its Municipal Jail or pay for access

to the City's courtroom. In particular, Plaintiffs allege that City employees working in the

Municipal Court, Municipal Jail, Police Department, and administrative departments collectively

pursued and continue to pursue an unconstitutional policy or custom that injured Plaintiffs, for

which the City itself is liable as a municipal corporation. Plaintiffs have adequately stated claims

against the City, and the City's Motion to Dismiss (Doc. 14) should be denied.

## ARGUMENT

**I. Plaintiffs Allege the Municipality of Maplewood, Not Individual City Agents or the Municipal Court, is Liable for Constitutional Violations.**

Plaintiffs allege a widespread policy or custom, executed in concert by multiple levels of

the City's staff in multiple departments, to extract funds from poor defendants by trapping them

in a cycle of arrests, fines, and fees—while making it extremely difficult to meaningfully contest

the underlying charges. The unconstitutional scheme at issue is maintained by the City itself, as a

municipal corporation, and Plaintiffs have properly alleged municipal liability on the basis of

that scheme pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Defendant

Maplewood attempts to recast Plaintiff's pleadings under *Monell* as allegations against the

Municipal Court alone, or against individual officers of the court or the City, then invoking

various forms of sovereign and judicial immunity to defeat the claims against it. The City's

attempt to disaggregate Plaintiffs' factual allegations fails because it fundamentally misconstrues

the contents of the Complaint and interjects irrelevant facts outside the Complaint.[1] The

---

[1] Contrary to the City's facile opening assertion, Plaintiffs do not allege they were ever charged or adjudged as being in contempt. By alleging that the municipal court "found Plaintiffs in contempt" (Doc. 15 at 1-2), the City ignores Plaintiffs' factual allegations. Further, the City offers no support for its claim that warrants simply *are* contempt findings within the City court's power. Even if, *arguendo*, Defendant *wanted* to find Plaintiffs in contempt, the Plaintiffs' absence alone would not be sufficient because "[f]ailure to appear, without more, does not constitute criminal contempt." *Thornton v. Doyle*, 969 S.W.2d 342, 346 (Mo. Ct. App. 1998).

Plaintiffs here do not allege that the Municipal Court, individual judges, individual clerks, or individual police officers are liable based on unlawful conduct in specific, isolated instances. Nor do Plaintiffs allege that Maplewood is vicariously liable for the unlawful conduct of those individual agents. Accordingly, the City's appeal to sovereign immunity, judicial immunity, and quasi-judicial immunity are all red herrings.

### A. Plaintiffs Have Adequately Pleaded *Monell* Liability by Alleging an Unconstitutional Practice Maintained by Maplewood as a Municipality.

As an initial matter, the Supreme Court has long held that it is "quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993). That is so because, since absolute and qualified immunity already protects certain individual bad actors against monetary liability under § 1983, "[e]xtending immunity protections to municipalities . . . would leave innocent persons harmed by the abuse of governmental authority without a remedy for compensation for their injury." *Sample v. City of Woodbury*, 836 F.3d 913, 917 (8th Cir. 2016); *see also Owen v. City of Indep., Mo.*, 445 U.S. 622, 651 (1980) (rejecting "good-faith" qualified immunity defense to municipal liability under § 1983, reasoning that "owing to the qualified immunity enjoyed by most government officials, . . . many victims of municipal malfeasance would be left remediless if the city were also allowed to assert a good-faith defense").

The circumstances under which municipal corporations may be held liable for violations of 42 U.S.C. § 1983 are equally well established: "Section 1983 liability for a constitutional

_____

Missouri law requires that "[a]n alleged contemnor is presumed to be innocent until proven guilty beyond a reasonable doubt," *id.*, and that "the party charged shall be notified of the accusation, and have a reasonable time to make his defense." R.S.Mo. § 476.130. Maplewood fails these due process requirements as a matter of policy and practice, and its attempt to clothe itself in judicial immunity on the basis of the warrants themselves is inapt.

violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (citing *Monell*, 436 U.S. at 691); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). At the motion to dismiss stage, a plaintiff need not even "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss," but rather need only allege facts from which a court may "draw an inference that the conduct complained of resulted from an unconstitutional policy or custom," which led in turn to the plaintiff's injury. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)); *see also Fant v. The City of Ferguson*, No. 4:15-CV-00253-AGF, 2016 WL 6696065, at *5 (E.D. Mo. Nov. 15, 2016) (same). "In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman*, 507 U.S. at 166.

Against that backdrop, the Eight Circuit has held that plaintiffs alleging municipal liability under the standards of *Monell* may satisfy the pleading requirement in two ways:

> A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700 (some punctuation omitted) (citing *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)).

Plaintiffs easily meet these pleading standards here. Plaintiffs have alleged facts showing that a range of municipal employees, including police officers, city jail staff, court clerks, municipal judges, and even Assistant City Managers are actively involved in a common pattern of unconstitutional conduct of assessing excessive fines, fees, and cash bonds, subjecting individuals to arrest and imprisonment for failure to make payments, and barring the courthouse door to those unable to pay for access to the court. *See* Compl. ¶¶ 3–9. In particular, Plaintiffs allege that the City automatically issues arrest warrants against individuals for "Failure to Pay" municipal traffic fines without performing *any* inquiry whatsoever into the individuals' ability to pay the underlying fine, and issues warrants for "Failure to Appear" without providing adequate notice of the individuals' asserted obligation to appear at a court date. *Id.* ¶¶ 32–33; 101. Those warrants are issued automatically, without any oversight, input, or approval from a magistrate or judge, as a matter of City policy or custom. *Id.* ¶ 34. .

Once such a warrant has issued, the City—through its court clerks, police officers, jail staff, and judges—tells the individual subject to arrest that it will not revoke the warrant unless the individual pays the full amount of a bond or recall fee accompanying the warrant, and that the City will not accept partial payment. *See id.* ¶¶ 118, 164–66, 191–93 (clerks); 184–87 (police officers); 124–25 (jail staff); 128–132, 213–14 (judges). Worse, various city officials then inform citizens that if they attempt to come to court *without* paying the full amount of their bond, they will be subject to arrest and will be forced to spend time in jail, without performing any inquiry into the citizens' ability to pay any amount, thus preventing access to the court for those unable to pay. *Id.* ¶¶ 118–19, 164–66 (clerk); 184–87 (police officers); 207–210 (jail staff); 168 (Assistant City Manager). The crux of the Complaint is that City employees at multiple levels in multiple departments pressure individuals to pay warrant recall fees without adjudicating guilt,

without making a contempt finding, without investigating the debtor's ability to pay, and without even permitting access to a forum to contest the fee or the underlying charges. Plaintiffs have therefore alleged that a pattern of unlawful, extortionate conduct exists, and have pled that City "policymakers," are aware of and condone this conduct. *See, e.g.*, *id.* ¶ 168.

The Plaintiffs, and all members of the class, were subjected to the same widespread practices described in the Complaint. Importantly, Plaintiffs never allege that the constitutional deprivations these practices cause are the result of the discrete, discretionary activity of individual bad actors on the City's payroll. Instead, Plaintiffs allege that the *City* is liable, precisely because of the "continuing, widespread, persistent pattern of unconstitutional misconduct," of which high level city administrators including Assistant City Managers are aware. *See Corwin*, 829 F.3d at 700. In sum, Plaintiffs have "allege[d] facts which would support the existence of an unconstitutional policy or custom," which is all they are required to do at the pleading stage. *Crumpley-Patterson*, 388 F.3d at 591.

**B.** **Plaintiffs Allege an Unconstitutional Custom and Practice Perpetuated by the City, Not by the Municipal Court.**

Maplewood has unreasonably read Plaintiffs claims as "against Defendant only in its capacity as the Maplewood Municipal Court." Def.'s Mem. (Doc. 15) at 12. According to Maplewood, because the allegedly unconstitutional scheme is enforced through warrants issued by the Municipal Court and fees imposed through the court, all of the allegations in the complaint are substantively against the court itself—which Maplewood contends is a State agency immune from suit under the Eleventh Amendment. *Id.* That characterization is incorrect.

The Complaint challenges "the City of Maplewood's extortionate scheme," in which the Municipal Court is one participating entity alongside an array of other municipal officers. *See* Compl. at ¶ 2. Nowhere in the Complaint do Plaintiffs allege or imply that the Municipal Court

is solely responsible for the scheme, or that discretionary decisions by individual judges or court employees are the origin of the unconstitutional conduct and Plaintiffs' injuries. Instead, Plaintiffs allege that a wide range of City employees in multiple departments participate on behalf of the City. Plaintiffs allege, for example, that officers of the Maplewood Police Department arbitrarily issues citations, arbitrarily make arrests, and arbitrarily seize arrestees' property to extract money on behalf of the City. *See, e.g.*, Compl. at ¶¶54–101, 175–177, 183–187. Maplewood Police Officers are employees and officers of the City's police department and Chief of Police, not the court, *see* Maplewood Muni. Code § 32-21, and Plaintiffs do not allege that those officers are acting on behalf of the court when issuing traffic citations or making arrests.

Plaintiffs also allege that as part of the scheme, the Maplewood Assistant City Manager has told individuals attempting to resolve a warrant that they would be arrested if they arrived at the municipal courthouse without making a full cash payment to the City. Compl. at ¶¶ 13, 52(h). 168. Assistant City Managers are not employees of the Municipal Court, nor of the Maplewood Police Department, but rather the City Manager's office. *See* Maplewood Municipal Charter, §§ 9.1, 9.2. Both Plaintiff Roberts-Webb and Plaintiff Williams allege participation in the scheme by the Maplewood police department and municipal jail officials, neither of which are agents or employees of the Court, who held them until they paid hundreds of dollars. Compl. at ¶¶ 19, 38.

Finally, Plaintiffs allege that the City, through the Municipal Prosecutor, initiates and prosecutes charges for the payment of fines and fees that benefit the City, including by misrepresenting to individual defendants that they cannot receive credit for time served and cannot reduce the amount of a bond or fine. *Id.* ¶¶ 134–36, 233(i). The Municipal Prosecutor and all assistant prosecutors, just like the other municipal employees identified above, answer to the

City and to the City Council directly via the City's law department—not to the Municipal Court.[2] Neither the Municipal Prosecutor nor the City's law department answer to the Municipal Court. Against this factual backdrop, Maplewood cites no authority to support its argument that because the City's unconstitutional scheme involves its courts, Plaintiffs' allegations "arise from" the Municipal Court, or are "substantively" against the court alone.

Apart from the fact that employees in multiple departments allegedly participate in the scheme, the Municipal Court is also not "substantively" the target of Plaintiffs' claims because Plaintiffs simply are not seeking relief against the Municipal Court. The entity whose conduct Plaintiffs seek to constrain, and the person from whom monetary redress is sought, is the City of Maplewood municipal corporation, not the State of Missouri or any of its courts. *See* Part I.A., *supra*. For that reason alone, the Municipal Court is not the "substantive" defendant, and neither Eleventh Amendment sovereign immunity nor judicial immunity apply. *See* Part I.C., *infra*. The relief sought in the Complaint could not be gained if a lawsuit were brought only against the Municipal Court, since the conduct of the City's police officers, Assistant City Manager, and Municipal Prosecutor, are not controlled or directed by the Municipal Court, but rather by separate departments created by the Maplewood City Charter and Maplewood Code of Ordinances.[3] An injunction against the Municipal Court, its judges, or its staff, could not alter or constrain the behavior of those separate City departments.

---

[2] The City Attorney is "appointed by the city manager with the consent of the council," leads the City's law department, and "serve[s] as city prosecutor in the municipal court." *See* Maplewood Charter, §§ 9.1, 9.2.

[3] *See* Maplewood Municipal Charter, §§ 9.1, 9.2 ("There shall be a department of law, the director of which shall be known as the city attorney. He shall be appointed by the city manager with the consent of the council. . . . He shall serve as city prosecutor in the municipal court."); 5.1 ("The council by the affirmative vote of a majority of its members shall appoint a city manager, who shall serve at the pleasure of the council. . . . The city manager shall appoint and, when the city manager deems it necessary for the good of the city, suspend or remove all city

In sum, the City's argument that the Municipal Court is the "true" defendant in this action is false, both as a matter of law and in consideration of the facts in the Complaint. The City, and the pervasive, ongoing practices that it promulgates through multiple City agencies and departments, are the targets of this action.

### C. Maplewood Cannot Stretch the Doctrines of Judicial or Quasi-Judicial Immunity to Shield the City from Liability Under *Monell.*

Judicial immunity does not apply to shield municipalities from *Monell* liability simply because a municipal court played some role in the alleged unconstitutional policy or custom. The fact that the Municipal Court played a role in the unconstitutional scheme alleged here by issuing warrants for Plaintiffs' arrests does not transform this into a "suit substantively," and only, "against the Maplewood Municipal Court." To the contrary, where a plaintiff alleges a "continuing, widespread, persistent pattern of unconstitutional misconduct by the [municipal] governmental entity's employees," *see Corwin*, 829 F.3d at 700, the fact that *some* of those employees are judicial officers is not grounds to dismiss a complaint against the municipality. Plaintiffs have alleged exactly such a course of conduct, and the City's arguments fail. *See, e.g.*, *Dowling v. City of Barbeton*, 2008 WL 4415931, *9 (N.D. Oh. Sept. 24, 2009) (finding that criminal charges, for which the municipal court issued arrest warrants, were the result of municipal actors "acting through policymakers and/or public officials," and therefore municipal liability allegations were sufficient to survive the city's motion to dismiss).

Maplewood relies on case law that stands for the undisputed but presently irrelevant propositions that 1) an individual judge cannot be held liable for her judicial acts absent a clear

---

employees and appointive administrative officers provided by law . . . ."); Maplewood Code of Ordinances §§ 32-21(a) ("The chief of police shall have command of the police department of the city."); *see also* Maplewood Code of Ordinances § 2-106 ("The city council shall provide for the existence of the . . . police department, . . . law department [city attorney], city administrative department [city manager] . . . .").

lack of jurisdiction, and 2) an individual municipal judge's actions do not impute liability to the

municipality.[4] In *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 461 (8th Cir. 1994), for example,

the court found that an individual Arkansas municipal judge who issued an unlawful arrest

warrant against a defendant whose adverse judgment was properly on appeal was immune from

suit because the judge "acted, at most, in excess of jurisdiction and not in the clear absence of

jurisdiction." That result is unremarkable. Unlike the cases Maplewood cites, however, Plaintiffs

have not named individual municipal court judges as defendants, nor have they alleged any

liability on the part of individual judicial officers. Any argument to the contrary flies in the face

of a plain reading of the Complaint, and of the actual practices alleged therein.

Critically, *none* of Maplewood's cases hold that a *municipality* is immune from liability

for a common, city-wide practice in which a municipal judge plays a role. In fact, the district

court in *Granda v. City of St. Louis*, 2006 WL 1026978, *6–7 (E.D. Mo. Apr. 13, 2006)—which

Maplewood cites for the proposition that judicial immunity shields the City from municipal

liability—found that while an individual municipal judge named as a defendant in a § 1983

action was protected by absolute judicial immunity, the *city's* liability at the summary judgment

stage depended on whether it maintained a "custom and/or policy requisite for liability" (i.e. the

---

[4] *Mireles v. Waco*, 502 U.S. 9 (1991) (excessive force suit by an attorney against and individual state court judge); *Pierson v. Ray*, 386 U.S. 547 (1967) (civil rights suit against local police officers and an individual municipal court judge); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2014) (judicial immunity shielded a hearing officer sued in his individual capacity); *Patterson v. Von Riesen*, 999 F.2d 1235, 1239 (8th Cir. 1993) (parole board members individually named as defendants successfully asserted absolute immunity against §1983 claims); *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982) (municipal judge sued individually had absolute judicial immunity from legal claims against him); *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012) (state court judge immune from §1983 action that an attorney brought against him individually); *Boyer v. County of Washington*, 971 F.2d 100, 102 (8th Cir. 1992) (court clerk named as one of several individual defendants in a §1983 action had absolute quasi-judicial immunity); *Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. 1997) (individual judge sued under §1983 for issuing an allegedly unconstitutional arrest warrant had absolute judicial immunity).

*Monell* analysis). There, the plaintiffs alleged that the defendant city and the defendant municipal judge unconstitutionally jailed parents whose children did not attend school in violation of the city's Truancy Ordinance. *Id.* at *1. "The Defendants argue[d] in their [motion for summary judgment] that Plaintiff's theory of liability on the part of the City [was] based on a respondeat superior theory and that such a theory is not applicable under §1983." *Granda*, 2006 WL 1026978 at *7. The court found, however, "that a more accurate characterization of Plaintiff's legal theory applicable to the City's alleged liability is based on *Monell*"; in other words, the city's liability for the allegedly unconstitutional practice of jailing truant children's parents in *Granda* was wholly independent from the individual liability of the judges who carried out that scheme. *Id.* Thus, "to prevail on her claim against the City, Plaintiff [had to] establish that, upon incarcerating Plaintiff, [the defendant municipal judge] was enforcing an unconstitutional policy or custom of the City." *Id.* at *8. Although the Court found that on the factual record developed in that case the plaintiff had not shown "facts to suggest that the City had a custom or policy which involved an unconstitutional practice of incarcerating violators of the City's Truancy Ordinance," the court expressly limited the application of judicial immunity to the individual judge defendant, and did not extend the immunity to the city defendant. *Id.* at *8–*9. Here, Plaintiffs have not named any individual municipal judges as defendants, and have instead adequately pleaded a claim for municipal liability under *Monell*.

More recently, and on facts very similar to those alleged in the Complaint, courts in this District have rejected the exact argument the City raises here: that a challenge to a municipality's unconstitutional scheme under *Monell* is tantamount to a suit against the individual municipal court judges who participate in that scheme. In *Fant v. City of Ferguson*, the Plaintiffs alleged that "they were repeatedly jailed by the City of Ferguson . . . for being unable to pay fines owed

to the City from traffic tickets and other minor offenses, without being afforded an attorney and

without any inquiry into their ability to pay." 2016 WL 6696065, at *1. Ferguson, like

Maplewood, argued that "each of the claims at issue ar[ose] out of a municipal court judge's

allegedly improper action (or inaction) in carrying out judicial functions as part of the Ferguson

Municipal Court, which, according to the City, is an arm of the state and is outside the control of

the City as a matter of state law," and that the city itself was therefore not liable under § 1983.

*Id.* at *3. Judge Fleissig squarely rejected that argument, relying on well-settled municipal

liability principles and citing the continuing practices alleged in the complaint:

> But Plaintiffs do not seek to hold the City liable for the judicial decisions
> made by a municipal court judge in particular cases. Indeed, as noted above,
> Plaintiffs allege that the constitutional deprivations here took place largely
> outside of any judicial process. Instead, Plaintiffs' complaint is replete with
> allegations that each of the injuries alleged was caused by the City's own
> unconstitutional policies and by the continuing and pervasive
> unconstitutional practices of a wide range of City employees. The Court
> finds that Plaintiffs have pleaded enough facts to raise a reasonable
> expectation that discovery will reveal evidence to support their claim of
> municipal liability under § 1983, which is all that is required at this stage.

*Id.* at *6. Plaintiffs have alleged an analogous scheme to the one that survived the pleading stage

in the *Ferguson* case, and deserve the same result.

     For the same reason that judicial immunity does not protect the City of Maplewood,

quasi-judicial immunity likewise does not reach the City's policy or custom. Once again, the

City cites cases that alleged individual court employees had committed unconstitutional acts, and

those cases neither discuss nor are relevant to a *Monell* analysis. In *Smith v. Slay*, No.

4:14CV1373CDP, 2015 WL 1955018, at *1 (E.D. Mo. Apr. 29, 2015), the plaintiff alleged that

he was served with a warrant for the arrest of someone else, and was misidentified and arrested

under that incorrect name despite his protestations of innocence. Among other defendants, the

plaintiff sued the county clerk who issued the arrest warrant, "in her official capacity as the

Circuit Clerk for the Twenty-Second Judicial Circuit of the State of Missouri . . . ." *Id.* at *2 n.1.

The Court dismissed those claims, finding that the clerk was protected by judicial immunity

while performing her duties in issuing warrants. *Id.* at *2–*3. Importantly, the court did *not*

dismiss claims against the St. Louis Police Department or individual officers, because the

plaintiff's "allegations suffice to raise the inference that the *SLMPD's hiring, training, and*

*supervising practices were constitutionally deficient* and that the department failed to have

existing *policies or customs* designed to prevent the continued incarceration of an innocent

person," which if true would prove liability under a *Monell* theory. *Id.* at *4 (emphasis added).

The court found that "it would appear obvious" that "failure to have a policy or custom in place

designed to respond to protestations of innocence" would "inevitably lead to the incarceration of

an innocent person," and that the plaintiff had "stated a plausible claim for relief on his official-

capacity counts against the SLMPD defendants, and he is entitled to conduct discovery in

support of his claims." *Id.* at *5. The same analysis applies here: Plaintiffs have not sued

individual clerks for issuing warrants or any other duties performed as clerks, but has sued the

*City* for its maintenance of an unconstitutional policy or custom. Quasi-judicial immunity is

irrelevant.

      D. <u>**Prosecutorial Immunity Also Does Not Protect Municipalities, Only**
             **Individual Prosecutors.**</u>

      Maplewood cannot assert prosecutorial immunity as an absolute defense to *Monell*

liability, either. Even if individual prosecutors would be immune from suit for their conduct in

that official capacity, that protection does not spread to the City under *Monell*.

      Recent controlling Eighth Circuit jurisprudence cited by the City squarely rejects the

prosecutorial immunity theory it advances. In *Sample v. City of Woodbury*, 836 F.3d 913, 914

(8th Cir. 2016), the plaintiff, a criminal defendant, sued several city prosecutors as well as the

City of Woodbury, alleging that "the City's failure to develop a conflict-of-interest policy led to a violation of his constitutional rights when the prosecutors filed a criminal complaint against him while simultaneously representing the victim of his alleged crime in separate civil actions." The district court dismissed the claims against all defendants, "finding that absolute immunity barred [the plaintiff's] federal constitutional claims." *Id.* at 914–15. The Eighth Circuit affirmed as to the claims against individual prosecutors, holding that in spite of allegations that "the Attorneys' filing of the complaint here fell outside the scope of their prosecutorial duties because it was done only to advance the claims of their client, [the victim], in other civil actions, . . . [a]llegations of unethical conduct and improper motive in the performance of prosecutorial functions do not defeat the protection of absolute immunity." *Id.* at 916–17. Critically, however, the Eighth Circuit reversed the grant of dismissal as to the city:

> Unlike government officials, municipalities do not enjoy absolute immunity from suit under section 1983. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Accordingly, the district court erred in holding that the City was absolutely immune from suit on [plaintiff]'s claims.

> In finding absolute immunity to bar [plaintiff's] claims, the district court did not distinguish the claims against the Attorneys from those against the City. It simply held all claims were barred by the doctrine. In *Leatherman*, however, the Supreme Court made it "quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit— either absolute or qualified—under § 1983." . . .

> Although the City laudably argues that extending absolute immunity to municipalities would further the underlying policy governing immunity protections to prosecutors, we cannot ignore the Supreme Court's explicit holding in *Leatherman* that absolute immunity does not apply to municipalities. Nor can we ignore its reasoning in *Owen*.

> Municipalities already enjoy some protection in that they can only be liable under section 1983 if municipal policy or custom caused the unconstitutional injury. . . . Extending immunity protections to municipalities as the City proposes would leave innocent persons harmed by the abuse of governmental authority without a remedy for compensation for their injury.

> Simply stated, absolute immunity does not bar [plaintiff]'s claims against
> the City.

*Id.* at 917–18. The Eighth Circuit's decision in *Sample* forecloses the City's argument here. If Plaintiffs had sued the individual prosecutors who brought charges against them, those prosecutors would likely have a legitimate basis to assert absolute prosecutorial immunity. *See id.* at 916. But that is not what Plaintiffs have done—they have sued the City under well-trod theories of municipal liability just like the *Sample* plaintiff, and the Court should reach the same result. The City's argument that it is protected by prosecutorial immunity is meritless.

### E.    Municipal Corporations Are Not Protected by the Eleventh Amendment.

The City's argument that the Maplewood Municipal Court is an arm of the state and therefore shielded by the Eleventh Amendment depends on a precarious leap of logic. The City asserts that the case is "substantively" against the Municipal Court, because the alleged violations inherently involve the court, and therefore is against the Missouri court system and the State of Missouri. But, as discussed above, the Plaintiffs are not seeking relief against the Municipal Court, and the City's Eleventh Amendment argument is irrelevant.

More fundamentally, Eleventh Amendment jurisprudence and the purpose for the Amendment itself show that it would be inappropriate to invoke the State's constitutional immunity here. The Eleventh Amendment protects the sovereign interests of the several states, and upholds important principles of federalism by forbidding any "suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury . . . ." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Similarly, a private party generally may not sue a State or state agency directly for injunctive relief under federal law, but may only bring suit against individual state agents to vindicate federal rights. *See generally Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *Ex parte Young*, 209 U.S. 123 (1908). Because the

Eleventh Amendment fundamentally protects the sovereign interests of the States, the Supreme

Court has held for decades that "[t]here is certainly no constitutional impediment to *municipal*

liability" for violations of § 1983, or any other federal statute. *Monell*, 436 U.S. at 690, n.54

(emphasis added). The *Monell* Court found that there was not "any basis for concluding that the

Eleventh Amendment is a bar to [imposing] municipal liability" for violating a lawful act of

Congress, because liability against a municipal corporation would not draw from the state

treasury or directly impact the state's sovereign authority. *Id.*

The authorities the City cites only underscore the fact that Maplewood is not entitled to

Eleventh Amendment immunity. The Eighth Circuit has held that "the ultimate question of

whether an entity is an arm of a State for purposes of the Eleventh Amendment turns on whether

a State is the real party in interest in a case involving the entity." *Pub. Sch. Ret. Sys. of Missouri*

*v. State St. Bank & Trust Co.*, 640 F.3d 821, 826 (8th Cir. 2011). Here, the State of Missouri is

clearly not the real party in interest. The Complaint bears allegations that the *City* maintains an

unconstitutional scheme to extract money from drivers within its city limits, and seeks to remedy

the *City*'s behavior. *See* Compl., Prayer for Relief ¶¶ h–j. All monetary relief, moreover, is

sought from the City, not directly or indirectly from the state treasury. *See id.* ¶¶ j, m, n. The

City's attempt to find shelter under the Eleventh Amendment is inapt, and the Court should reject

it.

**F.**     **Maplewood's Factual Assertion That the Alleged Unconstitutional Conduct**
           **Arises Solely from the Municipal Court Cannot Be Resolved at This Stage.**

To the extent Maplewood argues that Plaintiffs' allegations "substantively" arise from the

conduct of the Municipal Court and its agents, and that the Court is therefore the true defendant

in this action, the City has raised a factual dispute that is not appropriate for resolution on the

pleadings alone. Plaintiffs are required only to allege facts from which the Court may "draw an

inference that the conduct complained of resulted from an unconstitutional policy or custom" and injured them. *Crumpley-Patterson*, 388 F.3d at 591. Under Rule 12, the Court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" and draw all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (citing, *inter alia*, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n.1 (2002)). Repeatedly, "[t]he Supreme Court has rejected any heightened pleading requirement for claims alleging municipal liability under § 1983," and the normal rules of pleading as expressed in *Twombly* apply in this case.[5] *See Fant*, No. 4:15-CV-00253-AGF, 2016 WL 6696065, at *5 (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165–66 (1993)). The crux of Maplewood's argument—that the unconstitutional practices alleged do not in fact originate with the City—disputes the accuracy of the factual assertions in the Complaint, not whether the facts *as alleged* are sufficient to state a claim. That argument is not appropriate for resolution at the pleading stage.

II. **Each Plaintiff's Claims for Damages and Injunctive Relief is Ripe, and Each Plaintiff Has Standing to Assert Them.**

G. **Maplewood's Pattern and Past Practice of Unlawful Conduct Toward Mr. Lemicy Justifies His Claims for Injunctive Relief.**

Defendant improperly seeks dismissal of Plaintiffs' claims for injunctive relief by interjecting outside factual allegations[6] specific to Plaintiff Anthony Lemicy that purportedly occurred after the Complaint was filed. At the same time, the City does not challenge the standing of Plaintiffs Roberts-Webb, Yates, Eutz, Banks, or Williams, each of whom had

---

[5] Plaintiffs are not, for example, required to meet the "particularity" standard required in cases sounding in fraud pursuant to Fed. R. Civ. P. 9(b).

[6] Fed. R. Civ. P. 12(d) states: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

pending cases and/or open sentences in the City of Maplewood at the time the Complaint was filed. Nonetheless, Anthony Lemicy—like every other Plaintiff—had standing when he filed the Complaint to seek injunctive relief from Maplewood's patterned conduct of violating Mr. Lemicy's rights each time he traveled through the City's boundaries or was summoned to court without enough cash to avoid Maplewood's threat of imprisonment, and there is a reasonable likelihood that he will be subject to those constitutional violations again. *See Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037–39 (8th Cir. 2000).

"[S]tanding is based on the facts as they existed at the time the lawsuit was filed." *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000). Where a plaintiff seeks injunctive relief to prevent prior bad conduct from recurring, courts in the Eighth Circuit analyze the plaintiff's standing by first considering whether the plaintiff will encounter the defendants again, and then whether or not the defendants are reasonably likely to again deploy the same violative conduct. *Park*, 205 F.3d 1034 at 1037-38. In deciding this second prong, the courts consider "statements of future intent and patterns of past practice." *Id*. at 1038-39 (citing *Lyons*, 461 U.S. at 106 (identifying official police policy as an indicator of future police conduct); *see also United States v. Articles of Drug*, 825 F.2d 1238, 1248 (8th Cir.1987) (citing a "pattern of noncompliance" to justify injunctive relief). "Past wrongs [a]re evidence of whether there is a real and immediate threat of repeated injury." *Lyons,* 461 U.S. 95 at 103.

Where plaintiffs have alleged past practice of unlawful conduct and ongoing violations, and where no evidence exists on the record regarding the future intent of the defendant, the Eastern District of Missouri has denied motions to dismiss based on *Lyons* as premature. *See J.T. ex rel. Harvell v. Missouri State Bd. of Educ.*, No. 4:08CV1431RWS, 2009 U.S. Dist. LEXIS 7864, at *11 (E.D. Mo. Feb. 4, 2009) (denying motion to dismiss as premature where plaintiff

alleged pattern and practice resulted in discrimination based on plaintiff's disability); *C. ex rel. Connor v. Missouri State Bd. of Educ.*, No. 4:08CV1853 HEA, 2009 WL 2928758, at *10-11 (E.D. Mo. Sept. 8, 2009) (denying motion to dismiss injunctive claims for lack of subject matter at early stage of litigation where plaintiff alleged past pattern and practice). As the Ninth Circuit has observed, "[t]he possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." *Nicacio v. U.S. I.N.S.*, 768 F.2d 1133, 1136 (9th Cir.), *superseded*, 797 F.2d 700 (9th Cir. 1985).

Contrary to Defendant's claims, Mr. Lemicy has sufficiently alleged that Maplewood's harmful past pattern and practice present a real and immediate threat to Mr. Lemicy of either (i) having an arrest warrant issued against him; or (ii) having a fine or bond levied against him. *See* Compl. ¶¶ 154-172. Along with his co-Plaintiffs, who make similar claims, Mr. Lemicy personally alleged a pattern and practice by the City of issuing warrants and bonds against him, and arresting and detaining him on the basis thereof, without even attempting to evaluate his ability to pay. *Id.* ¶¶ 155-159. Although Mr. Lemicy has been assessed a penalty of community service in his cases with the City of Maplewood, the City continued issuing warrants for Mr. Lemicy's arrest and assessing warrant recall fees against Mr. Lemicy, which he still could not afford to pay. *Id.* ¶¶ 163-170. As of the filing of the Complaint, Mr. Lemicy's cases in the City of Maplewood were not yet closed. *Id.* ¶¶ 163-171. The Complaint contains factual allegations sufficient to evidence a pattern and practice of unlawful conduct by the City, which posed a threat of ongoing and/or future harm to Mr. Lemicy at the time of filing suit, and continues to pose such a threat today. Thus, the Court should find that Mr. Lemicy has standing to sue for injunctive relief and deny Part "G" of Defendant's Motion.

**H.    Plaintiffs' Claims Ripened when Maplewood Arrested, Jailed, and Extorted Money from Them.**

The City's argument that Plaintiffs' claims are not ripe misconstrues the ripeness doctrine. While ripeness cases hold that a claim may not justiciable "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," *Texas v. United States*, 523 U.S. 296, 299 (1998), the ripeness doctrine does not ignore the past and present. In the seminal ripeness case *Poe v. Ullman*, the Supreme Court held that because an 1871 Connecticut law banning the prescription of contraceptives or even giving advice regarding their use had never been enforced by the State, an action challenging the law's constitutionality was not ripe. 367 U.S. 497 (1961). Because the court could not be sure how enforcement by the state might proceed, and because it was not clear that the case would be properly decided through an adversarial adjudication, the Court found the plaintiff's claims premature. *Id.* at 507-508.

In contrast, Plaintiffs here do not challenge a law authorizing actions the Defendant has yet to undertake. Rather, Plaintiffs challenge the City's past and present policies and practices, of which they have all been victims, of which most were present victims at the time of filing, and of which all may be victims in the future. As alleged in the complaint, each Plaintiff was arrested on a warrant issued by the City of Maplewood, and held on a bond that they could not afford to pay, without regard for or inquiry into their ability to pay. Compl. ¶¶ 53-221. Simply put, Plaintiffs' claims ripened the moment Maplewood arrested and jailed each Plaintiff under the circumstances as alleged in the Complaint.

**I.    Plaintiffs Will Seek Leave to Voluntarily Dismiss Count VI and Amend their Complaint Accordingly.**

Plaintiffs alleged in Count VI that Maplewood failed to follow Missouri state statutes regarding due process for Maplewood's Failure to Appear ordinance charges in addition to

Maplewood's other unconstitutional misconduct. However, without waiving their claims in Counts I-V and VII, Plaintiffs concede for the purposes of the present Motion and the present Complaint that the *Rooker-Feldman* doctrine bars the relief sought in Count VI. *See Exxon Mobil v. Saudi Basic*, 544 U.S. 280, 284 (2005) ("The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

Plaintiffs hereby request leave from this Court to voluntarily dismiss Count VI of their Complaint and leave to file an Amended Complaint removing paragraphs g-h from their Prayer for Relief.

      **J.**      **The Plaintiffs' Particularized Facts Sufficiently Establish *Monell* Liability**.

As addressed above, the Complaint contains sufficient factual allegations from which Maplewood's municipal liability under § 1983 arises pursuant to *Monell*, 436 U.S. 658 (1978). Defendant's Motion mischaracterizes the facts and incorrectly applies of the law to frame its City-wide policies and practices as immune from suit, and the Court should reject those arguments. *See supra* §§ I.A–F.

      **K.**      **Plaintiffs Had a Right to Counsel in Maplewood's Debt Collection Proceedings.**

Defendant fails to cite any case law or legal authority in seeking to dismiss Count III, wherein Plaintiffs allege that they are entitled to counsel in complicated debt-collection proceedings at which they are jailed and at which the government is represented by an experienced lawyer. *See Turner*, 131 S. Ct. at 2520 (holding that counsel was not required in a child support proceeding because the civilian adversary was not represented by counsel, and expressly relying on the fact that the case did not involve collection of money by the government

in a proceeding in which the government was represented by counsel) (citing *Johnson v. Zerbst*, 304 U.S. 458, 462–463 (1938) ("[T]he average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel."); *see also State v. Stone*, 268 P.3d 226 (Wash. App. 2012) (applying *Turner* to require counsel in proceedings for contempt for nonpayment of court debt when the government is represented by a state prosecutor).

Specifically, Plaintiffs allege that the City does not advise individuals of their right to counsel, let alone *provide* lawyers to indigent people in debt-collection proceedings pursued by City lawyers wherein those people are jailed and which involve complicated state and federal legal and factual inquiries. Compl. ¶¶ 11, 35, 264-67. Plaintiffs also allege that the City jails them for allegedly violating payment plan orders or conditions arising from underlying cases in which they were likewise unrepresented by counsel. Those proceedings are constitutionally deficient. *Cf., e.g.*, *Alabama v. Shelton*, 535 U.S. 654, 658 (2002) ("We hold that a suspended sentence that may end up in the actual deprivation of a person's liberty may not be imposed unless the defendant was accorded 'the guiding hand of counsel' in the prosecution for the crime charged.") (quotation marks omitted).

In *Shelton*, even the state conceded that counsel would be required the moment it tried to imprison a person for violating a previously imposed condition. *Id*. at 672. Citing the principles articulated in *Shelton,* the Fourth Circuit expressed doubts about jailing a person for violating conditions imposed in previous proceedings in which she lacked counsel. *United States v. Pollard*, 389 F.3d 101, 105 (4th Cir. 2004) ("We also acknowledge, as did the Fifth Circuit, that the actual imposition of a prison term upon revocation of probation may pose Sixth Amendment

problems if the defendant was uncounseled for the underlying conviction that led to probation."); *United States v. Perez-Macias*, 335 F.3d 421, 428 (5th Cir. 2003) ("The actual imposition of a term of imprisonment upon probation revocation may pose a Sixth Amendment problem."); *id*. at 428 n.15 (noting that the Solicitor General and the Department of Justice conceded that "if an indigent misdemeanor defendant neither had counsel nor validly waived the right to appointed counsel, the defendant cannot be sentenced to imprisonment upon revocation of his probation").

Like the defendants in the cases above, Plaintiffs allege the City of Maplewood collects money from fines after a conviction by requiring people to meet onerous conditions, and then jails them when they do not meet those conditions—all without advising of an individual's right to counsel and without providing counsel either prior to imposition of the conditions or at the time of the purported violation of those conditions. Compl. ¶¶ 11, 35, 229, 233, 265-66, 270. The City does not reference these principles, cites no legal authority, and does not move to dismiss based on any disagreement with Plaintiffs' assertions. The Court should reject this argument.

**L.   Revenue Gained by Maplewood via Unconstitutional Policies Constitutes Unjust Enrichment.**

At this early stage, dismissal of Plaintiffs' Count VII seeking restitution for Maplewood's unjust enrichment of warrant bonds and fines would be improper. In Missouri, "[a] right to restitution is established under unjust enrichment if the following elements are satisfied: (1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; (3) that it would be unjust to allow the defendant to retain the benefit." *Homecomings Fin. Network, Inc. v. Brown*, 343 S.W.3d 681, 685 (Mo. App. W.D. 2011) (internal citation and footnote omitted). *See also Pitman v. City of Columbia*, 309 S.W.3d 395, 403 (Mo. App. W.D. 2010) (recognizing unjust enrichment action against municipality). .

Defendant argues that the City's "leveling of arrest warrant bonds and fines were all

judicial acts within the authority of the Maplewood Municipal Court" and thus "could not be unlawful." Def. Mem. at 24. As discussed above, however, Plaintiffs allege that Maplewood's policies and procedures—whereby it tickets, arrests, jails and extorts money from Plaintiffs and similarly-situated individuals—generate tainted revenue to the extent that if Maplewood is found liable for the constitutional violations described herein, permitting the City to retain those ill-gotten warrant bonds and bail amounts would constitute an inequitable and unjust enrichment. *See Damon v. City of Kan. City*, 419 S.W.3d 162, 192 (Mo. Ct. App. 2013) (Plaintiffs properly stated class unjust enrichment claim against municipality for use of unconstitutional traffic camera). As Count VII of the Complaint explains, if Maplewood's policies and procedures violate the law, then any money the City acquired from Plaintiffs and the proposed class through those policies and procedures must be restored to those individuals, including Plaintiffs. Maplewood's motion to dismiss Count VII should be denied.

## M.  Plaintiffs Properly Seek an Award for Attorneys' Fees for Their § 1983 Claims, Which are All Directed Against the City of Maplewood.

Plaintiffs do not allege a separate claim under 42 U.S.C. § 1988; it is well settled that § 1988 does not create a cause of action. Rather, it permits Plaintiffs to ask the Court, in its discretion, to allow their reasonable attorney's fee as part of their cost award if they prevail on their § 1983 claims:

> Section 1988 codifies the Civil Rights Attorney's Fees Awards Act of 1976, enacted in recognition that civil rights suits normally pit individuals, often socially marginal, unpopular, and impecunious, against well-funded public officers in cases whose social and political significance may dwarf the monetary stakes, which may be meager. These circumstances argue for awarding attorneys' fees in such cases, especially to prevailing plaintiffs, and that tilt has been ratified in the judicial interpretation of section 1983.

*Prime Co Pers. Communs. v. City of Mequon*, 352 F.3d 1147, 1152 (7th Cir. 2003).

Where "local officials violated a federal right of the plaintiff . . . the prevailing party in a

section 1983 suit is entitled by 42 U.S.C. § 1988, more or less as a matter of course, to the attorneys' fees reasonably expended by him in the suit." *Id.*

Like Defendant's other distracting, misplaced, and avoidant arguments, the City's argument against Plaintiffs' request for an award of attorney's fees under 42 U.S.C. § 1988 demonstrates a misunderstanding of the applicable law. If Plaintiffs prevail on any or all of their § 1983 claims against the City, they are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988 "more or less as a matter of course . . . ." *Ill. Bell Tel. Co. v. Vill. Of Itasca*, 503 F. Supp. 2d 928, 952 (N.D. Ill. 2007) (citing *Prime Co Pers. Communs.*, 352 F.3d at 1152, in declining to dismiss prayer for attorneys' fees under § 1988). Because Plaintiffs here have "successfully pled violations of [their] constitutional rights under § 1983," this Court should decline to foreclose Plaintiffs' prayers for attorneys' fees under § 1988 at this early stage. *See Ill. Bell Tel. Co.*, 503 F. Supp. 2d at 952.

### N.      The Complaint Satisfies Fed. R. Civ. P. 8 & 10 and Provides Information Necessary to Give Context to Maplewood's Policies and Procedures.

Defendant's final attempt to dismiss Plaintiffs' lawsuit misunderstands the Federal Rules of pleading and dismissal, and Defendant's request that this Court dismiss Plaintiff's cause of action because the Complaint is supposedly too long and contains footnotes is redundant of its contemporaneously-filed Motion to Strike and Memorandum in Support of Motion to Strike. *See* Docs. 16, 17. And in any event, the City was sufficiently able to understand Plaintiffs' claims to write a lengthy, detailed motion to dismiss. Defendant has not been prejudiced in any way, and its arguments under Rules 8 and 10 should be rejected.

"The remedy of repleader based on violation of Rules 8 and 10 has generally been reserved for egregious cases where a defendant does not know the basic facts that constitute the claim for relief against it." *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 898

(D. Minn. 2014). "A party may also move to strike from a pleading 'any redundant, immaterial, impertinent, or scandalous matter.'" *Fant et al. v. City of Ferguson*, 107 F. Supp. 3d 1016, 1027 (E.D. Mo. 2015) (quoting Fed. R. Civ. P. 12(f)). "Although courts enjoy 'broad discretion' in determining whether to strike a party's pleadings, such an action is 'an extreme measure.' Accordingly, motions to strike are 'viewed with disfavor and are infrequently granted.'" *Fant*, 107 F. Supp. 3d at 1027 (quoting *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)) (internal citations omitted).

To the extent Plaintiffs are required to respond to Defendant's grievances under Fed. R. Civ. P. 8 & 10, the Court should decline to exercise such an extreme, disfavored measure as dismissal. In *Fant et al. v. City of Ferguson*, the plaintiffs' Complaint was 55 pages long and contained allegations providing "sufficient, but not superfluous, detail, and its paragraphs [were] limited, as far as practicable, to discrete sets of circumstances, such that the City should be able to frame a responsive pleading." *Id.* at 1027. Here, the Complaint is similar in structure, applicable law, and practicability, and Maplewood had no difficulty—at least none attributable to Plaintiffs—in framing its responsive pleadings.

<u>**CONCLUSION**</u>

Based on the foregoing, at this early stage, the Court should deny Defendant's Motion to Dismiss because the Complaint contains sufficient and clear factual allegations to state claims for relief against the City of Maplewood under 42 U.S.C. § 1983 and under state law for past and future harms Maplewood's unconstitutional municipal debt collection policies have caused to Plaintiffs and similarly-situated individuals.

Date submitted: January 27, 2017

Respectfully submitted,

By: /s/ Nathaniel R. Carroll
    Thomas B. Harvey (MBE #61734MO)
    Michael-John Voss (MBE #61742MO)
    Blake A. Strode (MBE #68422MO)
    Nathaniel R. Carroll (MBE #67988MO)
    Edward J. Hall (MBE #0012692IA)
    ARCHCITY DEFENDERS, INC.
    1210 Locust Street
    Saint Louis, MO 63103
    Tel:   (855) 724-2489
    Fax:  (314) 925-1307
    tharvey@archcitydefenders.org
    mjvoss@archcitydefenders.org
    bstrode@archcitydefenders.org
    ncarroll@archcitydefenders.org
    ehall@archcitydefenders.org

and    Jeffrey D. Kaliel (admitted *pro hac vice*)
    Martin D. Quiñones (admitted *pro hac vice*)
    TYCKO & ZAVAREEI LLP
    1828 L Street, NW – Suite 1000
    Washington, D.C. 20036
    Tel:   (202) 973-0900
    Fax:  (202) 973-0950
    jkaliel@tzlegal.com
    mquinones@tzlegal.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that notice of filing and a true and correct copy of the foregoing was delivered to all counsel of record by this Court's ECF/PACER system upon filing on this 27th day of January, 2017.

/s/ Nathaniel R. Carroll