UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CECELIA ROBERTS WEBB, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:16 CV 1703 CDP |
| | ) | |
| THE CITY OF MAPLEWOOD, | ) | |
| MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion to certify three putative

classes, referred to as the Injunctive Class, the Paid Fines Class, and the Jailed

Class.  During a hearing held on the motion, plaintiffs proposed to narrow the Paid

Fines Class, and the parties later filed post-hearing briefs on this proposed

narrowed class.  For the reasons that follow, I will grant plaintiffs' motion to

certify the Injunctive Class and the Jailed Class, with the classes redefined as

described below.  I will not certify the Paid Fines Class as originally defined in

plaintiffs' motion, but I will certify the Narrowed Paid Fines Class as proposed at

the hearing.

### Procedural Background

On November 1, 2016, named plaintiffs Cecelia Roberts Webb, Darron

Yates, Anthony Lemicy, and Frank Williams filed this putative class-action

Complaint under 42 U.S.C. § 1983, alleging that various of their constitutional rights were violated by defendant City of Maplewood's policies, practices, and procedures of arresting individuals on warrants for failure to appear or failure to pay on minor ordinance violations, and making these individuals pay warrant bonds or jail them without an inquiry into or a determination of their ability to pay such bonds or fines.[1]  Plaintiffs claim that some of these warrants were "sham" warrants issued without a judicial finding of probable cause.  Plaintiffs also claim that they were denied fair access to court because of the threat of imprisonment if they appeared without money to pay bond on the warrants.  Plaintiffs claim that these policies, practices, and procedures violated their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.  They also bring a claim of unjust enrichment under Missouri law.[2]

I denied the City's early-filed motion to dismiss, after which the case was stayed for a year while the Eighth Circuit considered the City's interlocutory appeal.  After mandate issued on the Eighth Circuit's opinion affirming my decision, the parties underwent extensive and contentious discovery, which

---

[1] The claims of additional plaintiffs Robert Eutz and Krystal Banks were dismissed from this action on February 7, 2019.

[2] Plaintiffs' additional Sixth Amendment claim, *i.e.*, that they were not afforded counsel before being jailed on the warrants or on the debt-collection matters, is not a subject of the class certification motion.  I therefore do not address the claim in this Memorandum and Order.

prompted several requests for extensions of time for plaintiffs to file and the parties

to fully brief a class certification motion.  Plaintiffs finally filed their motion on

October 29, 2020.  After an additional dispute regarding the scope of an anticipated

motion hearing, the parties completed pre-hearing briefing on the motion in March

2021 and I heard oral argument April 19, 2021.  The parties submitted post-hearing

briefs on the putative Narrowed Paid Fines Class issue, and briefing closed on the

motion June 18, 2021.  The matter is now ripe for disposition.[3]

### Factual Background

Cecelia Roberts Webb was arrested on June 8, 2016, on an arrest warrant

issued in July 2015 for failure to appear in Maplewood municipal court on charges

arising from tickets issued in April 2015.  Bond on the warrant was set at $300.

Webb's pastor and fellow church members paid the bond and Webb was released

after being in custody for 3 hours and 10 minutes.  Counsel thereafter entered his

appearance for Webb, and the case was certified to St. Louis County.

On a second set of tickets issued April 14, 2016, Webb appeared in

Maplewood municipal court on May 23, 2016, pleaded guilty, and was assessed

fines and costs totaling $229.  Webb was advised that she must make payment on a

---

[3] I recite this history only for the reason that filing a motion for class certification four years after filing a class action lawsuit and ruling it several months later appears on its face to be contrary to the directive that a court must determine whether to certify the action as a class action "at an early practicable time after a person sues . . . as a class representative."  Fed. R. Civ. P. 23(c)(1)(A).

date certain or return to court.  Webb's payment dates were extended; but after she failed to appear on a payment date, an arrest warrant issued September 2, 2016. Bond on the warrant was set at $400.  The warrant was cancelled on November 10, 2016, and counsel entered his appearance for Webb.  After another failure to appear, another arrest warrant issued in January 2017.  Webb paid the $229 in fines and costs in October 2018, and the case was closed.

When Webb was arrested on June 8, 2016, on the outstanding warrant from July 2015, the Maplewood Police Department issued additional tickets to her. Bond on these new tickets was set at $250, which Webb's pastor and church members paid in addition to the $300 warrant bond described above.  Counsel entered his appearance for Webb on these tickets as well, and the case was certified to St. Louis County.  Upon deduction of $106 in court costs assessed by the county, the remaining $444 of Webb's total bond monies was refunded on July 18, 2018.

Darron Yates was arrested on April 20, 2016, on an arrest warrant issued on April 11, 2016, for failure to appear in Maplewood municipal court on three charges arising from tickets issued in January 2016.  Bond on the warrant was set at $500.  After Yates spent 44 hours and 20 minutes in jail, his bond was reduced to $200.  He was released after his mother paid the reduced bond.

On May 23, 2016, Yates appeared in Maplewood municipal court on one of

the three charges, pleaded guilty, and was assessed $77 in fines and costs. Yates was advised that he must make payment on a date certain or return to court.[4] After Yates failed to appear on a payment date, an arrest warrant issued on September 12, 2016, with bond on the warrant set at $200. Counsel entered an appearance on behalf of Yates, and the warrant was recalled. After additional failures to appear, another arrest warrant issued on January 6, 2017, with bond set at $250. Yates was arrested on this warrant on May 23, 2017, and was released on his own recognizance after being held for 4 hours and 36 minutes.

After failing to appear on additional payment dockets, Yates paid the $77 in fines and costs on September 1, 2017, and the one charge adjudicated through this process was closed. In the meanwhile, the other charges arising from the January 2016 tickets were certified to St. Louis County. These charges were disposed of in February 2018 with a suspended imposition of sentence and an order of community service.

The status of the $200 bond paid on the Maplewood warrant in April 2016 is unknown.

Anthony Lemicy was arrested on October 21, 2014, on arrest warrants issued September 22 and September 29, 2014, for failure to appear in Maplewood

---

[4] It is unclear why the court placed Yates on a payment docket instead of applying $77 of the posted $200 bond to pay the assessed fines and costs.

municipal court on charges arising from tickets issued on July 9 and July 23, 2014.

Bonds on the warrants were set at $800 and $600, respectively.  After being held

for 41 hours and 31 minutes on the warrants, Lemicy was released without

payment of any bond.  Lemicy pleaded guilty to some of the ticketed charges on

November 24, 2014, and he was assessed $539 in total fines and costs.  The

remaining charges were dismissed.  Lemicy was advised that he must make

payment on a date certain or return to court.  After Lemicy failed to appear on a

payment date, an arrest warrant issued on January 12, 2015, with bond on the

warrant set at $800.  Lemicy was arrested on the warrant on December 8, 2015,

and was immediately released without payment of bond.  After being ordered to

complete 40 hours of community service, Lemicy was again issued a municipal

arrest warrant on June 3, 2016, for failure to appear.  Bond on the warrant was set

at $400.  Upon learning of this warrant, Lemicy called the City clerk to request a

new court date.  The clerk informed him, however, that the $400 warrant bond

remained in effect and that he needed to pay the bond or sit in jail for 48 hours.

The clerk also informed Lemicy that the bond amount could not be reduced or

waived.  Lemicy also spoke to the City manager who told him that he would likely

be arrested if he came to the municipal courthouse without the $400 bond.

On August 15, 2016, counsel entered an appearance for Lemicy and

requested that the case be certified to St. Louis County.  The municipal judge

denied the request.  Lemicy appeared in municipal court with counsel on September 12, 2016, and, after "persistent begging" by Lemicy and counsel, the municipal judge recalled the June 2016 warrant and a plea agreement was reached.

Frank Williams voluntarily surrendered to the Maplewood police on February 16, 2016, on an arrest warrant issued in August 2012 for failure to appear.  Bond on the warrant was set at $800.  Williams was released after posting $500, which a family member provided him.  In March 2016, counsel entered their appearance for Williams and negotiated an amended charge to which Williams pleaded guilty on April 1, 2016.  He was assessed $300 in fines and costs.  After this $300 was deducted from the posted $500 bond, the remaining $200 of the bond was refunded to Williams.

Plaintiffs claim that they have been jailed by the City of Maplewood and denied access to its municipal court because they were unable to pay cash bonds or other debts resulting from minor traffic or ordinance violations.  They assert that the City's policy is to automatically issue an arrest warrant – sometimes without a judicial finding of probable cause – whenever someone ticketed for violating its municipal ordinances or vehicle laws fails to pay a fine or appear in court.  Once arrested on the warrant, the violator is presented with a Hobson's choice:  Either pay a predetermined bond or sit in jail possibly for days, without any consideration or determination of their ability to pay.  Plaintiffs further contend that once a

warrant has issued, the violator cannot voluntarily appear in municipal court to seek redress unless and until s/he pays the entirety of the warrant bond or pays the outstanding fine, under threat of custodial arrest.  Plaintiffs assert that the threat of sitting in jail is the means by which the City attempts to coerce violators into paying bonds to secure their release.  Plaintiffs contend that this policy or practice ensnares violators in repeated cycles of arrest, jailing, and pressure to pay bonds, fines, and fees irrespective of and without inquiry into their ability to pay. Plaintiffs maintain that since their poverty makes it difficult if not impossible to pay the bonds and/or fines, the City's policies described above violate their rights to due process and equal protection under the Fourteenth Amendment, as well as their First Amendment right to access the courts.  *See Webb v. City of Maplewood*, 889 F.3d 483, 484-85 (8th Cir. 2018).  Plaintiffs also contend that the City's policy of issuing arrest warrants without a judicial finding of probable cause, *i.e.*, handwritten "sham" warrants, violates the Fourth Amendment.

In their motion for class certification, plaintiffs "seek relief for Maplewood's systemic abusive practices of arresting and indefinitely jailing individuals in order to extract money."  (ECF 145-1, Memo. in Supp. at p. 2.)  They move to certify three putative classes under Rule 23, Federal Rules of Civil Procedure:

1)  The <u>Injunctive Class</u>, consisting of "all persons, whether or not such person has ever been jailed, who have paid or currently owe warrant recall fees or warrant bonds to the City of Maplewood arising from cases in the Maplewood court";

2)  The <u>Paid Fines Class</u>, consisting of "all persons, whether or not such person has ever been jailed, who have paid any amount to the City of Maplewood from fines, fees, costs, or surcharges, including warrant recall fees or warrant bonds arising from cases in the Maplewood court and who have not been provided an opportunity to prove indigence"; and

3)  The <u>Jailed Class</u>, consisting of "all persons who have been jailed by the City of Maplewood for nonpayment of fines, fees, costs, or surcharges, including warrant recall fees and/or warrant bonds arising from cases in the Maplewood court and who (1) were not provided an opportunity to prove indigence prior to jailing; (2) were not considered a danger to the community by notation in Maplewood's file; and (3) were not designated as a flight risk at the time of jailing."  Plaintiffs also seek to certify a subclass of the Jailed Class, comprised of persons who were arrested and jailed on "sham" warrants.

(*Id.*)  The City opposes class certification on several grounds.  Both sides have submitted documentary, testimonial, and other evidence to support their respective positions.

## Legal Standard Governing Class Certification

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)."  *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  Plaintiffs here seek Rule 23(b)(2) certification for all three Classes as well as Rule 23(b)(3) certification for the Paid Fines Class and the Jailed Class.  Plaintiffs carry the burden of showing that they meet Rule 23's requirements.  *See Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).

Rule 23(a) allows individuals to sue on behalf of a class if:  (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).

Rule 23(b)(2) permits a class action where defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Class claims under Rule 23(b)(2) must be cohesive, "in that 'the relief sought must perforce affect the *entire class at once*.'"  *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-62 (2011)) (emphasis in *Ebert*).

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance), and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority).  "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442,

453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49, pp. 195-96 (5th ed. 2012)).  "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence."  *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) (citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)).  And the calculation of damages must be based on a model applicable to all members of the class. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013); *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 559 (W.D. Mo. 2014).  If the measure of damages is based on a common model linked to plaintiffs' theory of liability, individual assessments of damages do not erode Rule 23(b)(3)'s predominance factor.  *See Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016); *Cromeans*, 303 F.3d at 559; *McAllister v. St. Louis Rams, LLC*, No. 4:16-CV-172 SNLJ, 2018 WL 1299553, at *9 (E.D. Mo. Mar. 13, 2018), *amended in part*, 2018 WL 2869025 (E.D. Mo. Apr. 19, 2018).

Certification of a class is proper only if, after "rigorous analysis," I am satisfied that the Rule 23 requirements are met.  *Dukes*, 564 U.S. at 350-51 (internal quotation marks and citation omitted).  *See also Comcast Corp.*, 569 U.S. at 33.  Although that "rigorous analysis" may frequently entail some overlap with the merits of the underlying claims, *see Dukes*, 564 U.S. at 351, "[m]erits questions may be considered . . . only to the extent . . . that they are relevant to determining

- 11 -

whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  *See also MacCann v. Tropicana Ent., Inc.*, No. 4:19 CV 404 RWS, 2021 WL 1105500, at *5 (E.D. Mo. Mar. 23, 2021).  "[The Court's] primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1037 (8th Cir. 2018).

## Standing

As a preliminary matter, the City contends that none of plaintiffs' proposed classes can be certified because they each contain putative members who had not yet sustained an injury when this lawsuit was filed on November 1, 2016.  Citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010), and its holding that "a class cannot be certified if it contains members who lack standing," *id.* at 1034, the City argues that for any putative class to be certified, each known and unknown member of the class had to have suffered a claimed injury as of the date the Complaint was filed.  The City's reliance on *Avritt* is misplaced.

*Avritt* involved allegations by purchasers against a seller of fixed deferred retirement annuities.  The plaintiffs alleged that the seller engaged in unfair interest crediting practices by systematically crediting higher interest to the most recent deposits and lower interest to the older deposits.  Plaintiffs claimed that this

conduct led them to purchase the annuities on the false assumption that the initial higher rate would continue over time.  The district court denied class certification, finding that plaintiffs did not demonstrate that injunctive relief under Rule 23(b)(2) was appropriate to the class as a whole and, further, that common questions did not predominate as required by Rule 23(b)(3) because individualized evidence would be required as to how the annuity product was marketed to each purchaser.  *See Avritt*, 615 F.3d at 1028-29.  On appeal, the Eighth Circuit noted that the California statute at issue had been interpreted as permitting uninjured parties to join a class in state court as long as one representative had statutory standing.  *Id.* at 1034.  The Eighth Circuit noted, however, that federal constitutional standing requirements do not permit "a named plaintiff [to] represent a class of persons who lack the ability to bring a suit themselves," *id.*, which in *Avritt*'s context meant that those who could not have been injured by the defendant's conduct *at any time* could never bring a suit themselves and thus could not be part of the class.

Contrary to the City's characterization, the effect of *Avritt* was not to deny class status to putative members who were injured in fact by a defendant's conduct after the class action lawsuit was filed.  Reading *Avritt* in this manner would be too broad.  Indeed, as to the matter of standing on the date a class action is filed, the law is well established that "[a] putative class action can proceed as long as one named plaintiff has standing."  *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir.

2017) (citing *Horne v. Flores*, 557 U.S. 433, 446 (2009); *Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977)).  Accordingly, as long as one named plaintiff had Article III standing when the case was filed, a putative class action can proceed on behalf of members who have suffered similar injuries in fact.  The class must be defined, however, in such a way that anyone within it would have standing, that is, would have suffered such injury.  *Avritt*, 615 F.3d at 1034; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006), *quoted approvingly in Avritt*, 615 F.3d at 1034.

To the extent the City challenges the individual standing of each named plaintiff as to the putative class(es) they seek to represent, I address its arguments *post* as they relate to each separate class.

### Ascertainability

The City also generally argues that class certification must be denied because none of the putative classes is adequately defined and ascertainable.

Ascertainability is not a "separate, preliminary requirement" of class certification, but rather an implicit one enforced through a rigorous analysis of Rule 23's requirements.  *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016); *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017).  Where a dispute arises regarding the method for identifying class members, however, an independent discussion of whether a class is ascertainable is

warranted. *McKeage*, 847 F.3d at 998. As with the City's arguments as to plaintiffs' individual standing, I will address the City's challenges to ascertainability as they relate to each separate class, *post*.

### The Injunctive Class – Rule 23(b)(2)

Plaintiffs seek Rule 23(b)(2) certification of the "Injunctive Class," which they define as:

> All persons, whether or not such person has ever been jailed, who have paid or currently owe warrant recall fees or warrant bonds to the City of Maplewood arising from cases in the Maplewood court.[5]

Plaintiffs contend that members of this class were or will continue to be barred from accessing Maplewood's municipal court because of the City's practice of making such access contingent upon full payment of outstanding warrant bonds. All named plaintiffs seek to represent this class.

<u>Rule 23(a) Requirements</u>

*Numerosity*

Rule 23(a)(1) requires that the members of a class be so numerous as to make joinder impractical. Plaintiffs aver that, according to the City's data, the Class is composed of thousands of individuals. The City does not challenge

---

[5] In their briefing and during oral argument, plaintiffs conceded that the City does not add additional "warrant recall fees" to the bond debt. They therefore agree that the class definition may be modified to strike reference to "warrant recall fees."

plaintiffs' motion with respect to numerosity, and I find this criterion satisfied.

*Commonality*

Rule 23(a)(2) requires that the members of a class be united by a common question of law or fact.  Commonality requires a showing that class members have suffered the same injury and that a class action has the capacity to generate common answers to resolve the litigation.  *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 571 (8th Cir. 2015).  Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all.  *See Downing v. Goldman Phipps PLLC*, No. 4:13CV206 CDP, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015).

Plaintiffs contend that the City's policy of requiring that persons subject to its warrants pay large sums in bond money before being permitted to seek redress in its court regarding their ability to pay violates the First Amendment.  They argue that common questions of fact involve whether the City engages in this general policy, and that common questions of law involve whether such a policy is constitutional.  Plaintiffs seek injunctive relief in the form of an order to the City that it cease denying access to its court to individuals who owe bonds on warrants issued for minor ordinance violations.

The City first contends that plaintiffs' purported First Amendment claim is actually an unpled "exorbitant bond" claim under the Eighth Amendment or a

"poverty discrimination" claim under the Fourteenth Amendment.  Regardless, the City argues that plaintiffs cannot show that its court is unavailable to them. Resolution of the City's arguments would require a preliminary inquiry into the merits of plaintiffs' claim, which is improper in determining whether to certify this Class.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).  To the extent the City argues that proof of actual injury is required to prevail on a denial-of-access claim and that the individualized nature of each putative class member's claim of injury defeats commonality, such an argument is more appropriately directed to Rule 23(b)(3)'s predominance inquiry, which is irrelevant to a Rule 23(b)(2) injunctive class.  *See Dukes*, 564 U.S. at 362-63.  "When a class seeks an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate[.]"  *Id.* at 362.

Common questions of fact and law unite plaintiffs' and the putative class members' claim for injunctive relief seeking to prohibit the City of Maplewood from conditioning a person's access to its court on the payment of outstanding warrant bonds.  Accordingly, this criterion is satisfied.

*Typicality*

The typicality requirement of Rule 23(a)(3) is satisfied if the named plaintiffs assert claims typical of the class.  Typicality tends to merge with

commonality, but the Eighth Circuit has given it independent meaning by requiring a "demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Huskey v. Birch Telecom of Mo., Inc.*, No. 4:17-CV-02415 JAR, 2018 WL 4679738, at *3 (E.D. Mo. Sept. 28, 2018) (citing *Paxton v. Union Nat'l Bank*, 688 F.3d 552, 562 (8th Cir. 1982)).  This can be met when the claims of the members and representatives are based on the same legal or remedial theory.  *Id.*

The City asserts the same arguments it raised in relation to the commonality requirement and further contends that the named plaintiffs' claim of denial of access is not typical of the putative class because the plaintiffs here have all availed themselves of the court to which they claimed they were denied access. This argument again comes dangerously close to requiring a preliminary determination of the merits of the claim.  Without delving too deeply into the merits, I merely note that evidence submitted on the motion supports plaintiffs' allegation that access to Maplewood's municipal court – for those who had outstanding warrant bonds – was conditioned upon payment of such bonds.  While the specific circumstances of class members may differ with regard to the nature and amount of the bonds imposed, whether they were paid, and the manner by which they were paid, the policy of requiring payments before allowing access to court applies to all.  The typicality criterion of Rule 23(a)(3) is therefore satisfied.

*Adequacy*

Rule 23(a)(4) requires that the named plaintiffs adequately protect the interests of the class. The City again relies on its arguments raised above to suggest that plaintiffs are not adequate representatives, and I again reject those arguments.

The adequacy factor serves "to ensure due process for absent class members, who generally are bound by a judgment rendered in a class action." *Rattray v. Woodbury Cty., Iowa*, 614 F.3d 831, 835 (8th Cir. 2010). Class representatives and their attorneys must be able and willing to prosecute the action competently and vigorously, and each representative's interests must be sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. *Cromeans*, 303 F.3d at 553. "The experience and capability of the representative's counsel bears upon the adequacy of the representative." *Rattray*, 614 F.3d at 836.

On the information before the Court, I am confident that the named plaintiffs' interests are aligned with those of the putative class and that their counsel are competent to prosecute the action.

Rule 23(b)(2) Requirements

Plaintiffs seek to certify the Injunctive Class under Rule 23(b)(2), which applies when a single injunction or declaratory judgment would provide relief to each member of the class. *Dukes*, 564 U.S. at 360. Class claims under Rule

23(b)(2) must be cohesive, "in that 'the relief sought must perforce affect the *entire class at once.*'"  *Ebert*, 823 F.3d at 480 (quoting *Dukes*, 564 U.S. at 361-62) (emphasis in *Ebert*).  Other than the arguments addressed above, the City raises no specific argument against the cohesiveness of this class.  The relief sought here is applicable to all class members as it would permit all persons who have outstanding warrant bonds on minor City ordinance violations to access the City's municipal court without being first required to pay bond monies to do so.  Because the Injunctive Class's challenge to the City's policy is premised on a ground that is applicable to the entire class, Rule 23(b)(2) is satisfied.  *See Davis v. Weir*, 497 F.2d 139, 146 (5th Cir. 1974).

Ascertainability

The City argues that the Injunctive Class is unascertainable because the inclusion of persons who "currently owe" bonds on warrants necessarily requires the Class's composition to change daily, thus making the "roving, unending class" impossible to identify.

Injunctive relief for a class certified under Rule 23(b)(2) is not based on individualized claims that require individual identities for individualized relief.  A Rule 23(b)(2) injunctive class is a "mandatory class," that is, there is no opportunity for class members to opt out.  *See Dukes*, 564 U.S. at 361-62.  The injunctive relief sought by this Class – namely, that the City shall not deny access

to its court to persons who have had or currently owe a warrant bond, or condition

such access upon payment of such bond – is indivisible and benefits all class

members, identified and unidentified.  Further, because the very nature of an

injunctive class contemplates that there will be class members who can only be

determined in the future, the City's argument that this "unending" class cannot

presently be ascertained does not defeat class certification under Rule 23(b)(2).

Because plaintiffs have met their burden of showing that the Injunctive Class

satisfies the requirements of Rule 23(a) and (b)(2), I will certify the Class and

appoint named plaintiffs Webb, Yates, Lemicy, and Williams as Class

Representatives.  I will appoint John Waldron, Nathaniel Carroll, and Blake Strode

of ArchCity Defenders, Inc.; Andrea R. Gold of Tyco & Zavareei LLP; and Ryan

Keane of Keane Law LLC as Class Counsel.

### The Paid Fines Class – Rule 23(b)(3)

In their motion for class certification, plaintiffs seek Rule 23(b)(2) and (b)(3)

certification of the "Paid Fines Class," which they define as:

> All persons, whether or not such person has ever been jailed, who
> have paid any amount to the City of Maplewood from fines, fees,
> costs, or surcharges, including warrant recall fees or warrant bonds
> arising from cases in the Maplewood court and who have not been
> provided an opportunity to prove indigence.[6]

---

[6] In addition to conceding that the City does not add additional "warrant recall fees" to the bond debt (*see* n.5, *supra*), plaintiffs also concede that the City does not retain bond monies for profit but instead refunds them after applying them to outstanding fines and costs.   Plaintiffs therefore agree that the class definition may be modified to strike reference to "warrant recall fees" and

Plaintiffs contend that members of this class paid fines, costs, and fees under threat of imprisonment if they failed to pay.  They seek injunctive relief in the form of requiring constitutionally adequate hearings to determine indigency before imposing fines or costs; and monetary relief in the form of restitution for all fines, fees, and costs paid into the City's coffers.  Plaintiffs Webb, Yates, and Williams seek to represent this Class.  For the following reasons, I must deny plaintiffs' motion to certify this Class as presently defined because is it not ascertainable.  I will, however, narrow the Class and modify its definition as proposed by plaintiffs' counsel during oral argument.

"A class may be ascertainable when its members may be identified by reference to objective criteria."  *McKeage*, 847 F.3d at 998 (citing *Sandusky*, 821 F.3d at 996).  Where identifying class members through some objective basis is not possible, the class is not ascertainable.  *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 4:12CV174 CDP, 2017 WL 2861878, at *4 (E.D. Mo. July 5, 2017).

Plaintiffs proffer that their data expert, Arthur Olsen, analyzed municipal court records and identified those persons who have paid fines and fees to the City.

---

"warrant bonds."

Plaintiffs also aver that because the City's policy was to not assess *any* person's ability to pay, all persons who paid fines and fees did not receive an indigency hearing and thus can be objectively determined as part of the Class.  Plaintiffs contend that whether or not a person was in fact indigent is not relevant because the requirement to assess a person's ability to pay applies to both indigent and non-indigent persons.

Membership in this Class as originally defined is too general and would include persons unaffected and unharmed by the City's alleged unconstitutional conduct.  It cannot be said that common questions of law or fact bind this Class together.  Moreover, evidence submitted by the City shows that several discrete scenarios exist regarding the payment of fines to the City of Maplewood, including but not limited to:  online payment through the Traffic Violations Bureau; paying through mail on or before the scheduled court date; appearing through counsel and paying after negotiated disposition; paying after trial and adjudication of guilt, some with and some without counsel; paying through appearance at payment dockets, some with and some without counsel.  Indeed, the unique scenarios of the three proposed Class Representatives themselves showcase the potential differences between putative class members when it comes to the mere payment of fines.  Williams was assessed and paid a fine in accordance with a negotiated plea after appearing in court with counsel.  Webb paid fines two and a half years after

they were assessed, which was two years after this case was filed and after counsel

entered an appearance on her behalf.  Yates was assessed a fine after pleading

guilty without counsel; after securing counsel, he paid the fine eighteen months

later, which was almost a year after this case was filed.  Against the backdrop of

these different scenarios, when considered with the additional scenarios described

above, I cannot conclude with confidence that putative class members suffered the

same injury, that a class action has the capacity to generate common answers to

resolve the litigation, or that the proposed Class Representatives' claims are typical

of those of putative class members.  I will therefore deny plaintiffs' motion to

certify the Paid Fines Class as initially defined in their Complaint and motion.

Plaintiffs propose two alternative, narrower definitions of the Class.  They

first offer to narrow the Class to include only those persons who were coerced to

pay fines because of the threat of imprisonment, but they offer no objective criteria

from which to identify such persons on a class-wide basis.  For instance, Williams

paid his fine after a negotiated plea secured with the assistance of counsel, but –

for this proposed narrowed class – plaintiffs do not explain how Williams was

allegedly coerced into paying this negotiated fine while he had legal

representation, or how he perceived the purported threat.  The mere fact that a

person paid a fine does not mean they did so because of any real or perceived

threat of imprisonment.  With no objective criterion available to accurately identify

- 24 -

potential class members who felt coerced, this proposed narrowed class is unascertainable.  In addition, with no common evidence available to apply on a class-wide basis, this Class lacks commonality and predominance, even when narrowed as plaintiffs first propose.  *See St. Louis Heart Ctr.*, 2017 WL 2861878, at *5.

At oral argument, however, plaintiffs suggested that the Class can be narrowed even further to include only those persons who paid fines *after* being detained for failure to pay or failure to appear.  Plaintiffs proffered that Webb and Yates are appropriate representatives of this Narrowed Paid Fines Class given that they paid their assessed fines to the City only after being jailed and after experiencing the City's coercive jailing process.  I agree that the Class can be defined in such a way to limit it to only those persons who suffered the alleged constitutional injury caused by the City's policies, practices, and procedures as plaintiffs claim – that is, that the City's unconstitutional policy of assessing fines without inquiring into a person's ability to pay *and* holding them on municipal warrants issued for failing to appear or to pay, effectively coerced these indigent violators to pay to the City unconstitutionally assessed fines, fees, and/or costs.

Accordingly, I will accept plaintiffs' second narrowed definition of the Paid Fines Class and limit my consideration of this proposed Class – the "Narrowed Paid Fines Class" – to those persons who paid to the City fines, costs, and/or fees

that were assessed without an inquiry into their ability to pay, *and* who paid such fines, costs, and/or fees after being arrested and jailed on Maplewood municipal warrants issued for failure to pay or for failure to appear.  This Narrowed Paid Fines Class is ascertainable from municipal court records and is adequately limited to the indigent, given that "most people would not willingly stay incarcerated if their financial circumstances permitted them to avoid it."  *Dixon v. City of St. Louis*, No. 4:19-CV-0112-AGF, 2021 WL 616153, at *7 (E.D. Mo. Feb. 17, 2021). I find that both Webb and Yates are appropriate representatives of this narrowed Class.  They were both assessed fines without an opportunity to prove indigence, arrested and jailed on City warrants issued for failure to appear, and paid their fines only after additional City warrants issued for failure to appear on payment dockets. Although neither paid the fines until after this lawsuit was filed, the alleged unconstitutional process of assessing fines against them without an inquiry into indigency, detaining them for failure to appear, and issuing additional warrants for failure to appear occurred well before November 1, 2016.

The City does not challenge the numerosity of this Class and, for the reasons set out above, plaintiffs Webb and Yates have satisfied Rule 23(a)'s commonality, typicality, and adequacy requirements for class certification.

Rule 23(b)(3) Requirements

The crux of the parties' disagreement over Rule 23(b)(3) certification

centers on the predominance inquiry.  The City raises no challenge to the superiority of a class action in the circumstances here.  Accordingly, I focus my discussion on predominance as well.

I agree with plaintiffs that the City's liability for the alleged violations of plaintiffs' constitutional rights can be established through common proof, including municipal court records, jail records, revenue records, and testimony of municipal employees.  While the City contends that no records exist to definitively show whether or not indigency inquiries were made, plaintiffs contend that that is precisely the point:  at no time were indigency hearings *ever* held as to *any* individual.  And to the extent the City argues that such hearings have been conducted since September 2017, plaintiffs contend that court records, employee testimony, and other evidence show that the City's processes continue to lack the procedural safeguards constitutionally required on an ability-to-pay inquiry. Because the existence of the City's policies and processes are subject to common proof, the question of whether they pass constitutional muster can be determined on a class-wide basis.

The City argues, however, that the adequacy of an indigency hearing depends upon the individualized circumstances of each putative class member, which would predominate over any common issue to be resolved.  But the predominate question is what the City assumes to be true – was the *process* it

followed constitutionally sound?  Because it is the City's *policy* that plaintiffs

allege is unconstitutional, this question does not turn on any individual

determinations.  *See Betances v. Fischer*, 304 F.R.D. 416, 430 (S.D.N.Y. 2015).

Plaintiffs aver that damages can be determined using a common method of

analyzing municipal court records that show the amount of fines paid by persons

who had been earlier detained on City warrants issued for failure to appear or for

failure to pay.  Because this model for calculating damages is linked to plaintiffs'

theory of liability and is applicable to all members of the Class, individual

assessments of damages do not erode Rule 23(b)(3)'s predominance factor.

Finally, although not challenged by the City, I find certification of this Class

to be superior to other methods of adjudication.  The Class includes hundreds of

plaintiffs, and class certification will allow for the resolution of their claims in a

single forum.  The Class consists of indigent persons subject to detention for

failure to appear or for failure to pay on minor ordinance violations.  It is unlikely

that many if not most of these individuals would ever commence litigation on their

own behalf to vindicate their rights.  "It is appropriate for the court to consider the

inability of the poor or uninformed to enforce their rights and the improbability

that large numbers of class members would possess the initiative to litigate

individually." *Betances*, 304 F.R.D. at 432 (internal quotation marks and citations

omitted).

Because plaintiffs have met their burden of showing that the Narrowed Paid Fines Class satisfies the requirements of Rule 23(a) and (b)(3), I will certify the Class under Rule 23(b)(3) and appoint named plaintiffs Webb and Yates as Class Representatives.  Plaintiffs' request to certify this Class under Rule 23(b)(2) for injunctive relief is addressed later in this Memorandum.

### The Jailed Class – Rule 23(b)(3)

Plaintiffs seek Rule 23(b)(2) and (b)(3) certification of the "Jailed Class," which they define as:

> All persons who have been jailed by the City of Maplewood for nonpayment of fines, fees, costs, or surcharges, including warrant recall fees and/or warrant bonds arising from cases in the Maplewood court and who (1) were not provided an opportunity to prove indigence prior to jailing; (2) were not considered a danger to the community by notation in Maplewood's file; and (3) were not designated as a flight risk at the time of jailing.[7]

Plaintiffs contend that members of this Class were jailed on arrest warrants issued for failure to pay or for failure to appear on minor ordinance violations and were held for periods of hours or days because they could not afford the bond on the warrant and were not provided a hearing to assess their ability to pay bond.  They seek injunctive relief in the form of requiring indigency hearings before

---

[7] As noted above, plaintiffs concede that the City does not add additional "warrant recall fees" to bond debt (*see* n.5, *supra*) and therefore agree that the class definition may be modified to strike reference to "warrant recall fees."

conditioning release from jail on payment of monetary bonds; and monetary relief in the form of damages for the value of lost liberty during the periods of detention. Plaintiffs Webb, Yates, and Lemicy seek to represent this Class.

As an initial matter, I note that plaintiffs' motion for class certification refers to a "subset" of this Class that is composed of persons who were arrested and jailed on blank "sham" warrants without a judicial finding of probable cause, *i.e.*, the "Sham Warrant Class." During oral argument on the motion, plaintiffs' counsel requested that this subset be certified as an independent class. Because plaintiffs have presented insufficient evidence to show that any named plaintiff meets the criteria of this proposed class, I will deny certification of the Sham Warrant Class, regardless of whether it is considered a subclass or an independent class. *See Amchem Prods.*, 521 U.S. at 625-16 ("a class representative must be part of the class"). Accordingly, the following discussion addresses only the broader putative "Jailed Class."

Rule 23(a) Requirements

*Numerosity*

The City does not challenge plaintiffs' assertion that the members of this class number in the thousands. This criterion is satisfied.

*Commonality*

Plaintiffs contend that the City's practice of imposing cash bond on warrants

issued for failure to appear or to pay on minor ordinance violations and jailing

arrestees on such warrants for periods of hours or days in an effort to extract bond

monies from them without considering the arrestee's ability to pay resulted in their

being jailed for being indigent in violation of the Fourteenth Amendment.

Plaintiffs seek resolution in the form of timely individualized hearings to determine

the necessity of bond and the arrestee's ability to pay.  They also seek to recover

the general value of their time spent in detention pursuant to the City's

unconstitutional policies and practices.  Plaintiffs and the putative class members

suffered the same injury, and common questions of fact and law unite their claims

for relief.  Accordingly, this criterion is satisfied.

*Typicality & Adequacy*

The City generally contends that none of the proposed class representatives

is typical of the Class or an adequate representative because none of them was

detained beyond the reasonable, constitutionally permissible 48-hour period.  The

City argues that this "reasonableness" inquiry alone shows that each proposed class

representative was detained under unique circumstances with unique reasons

underlying the length of their respective detentions.  Specifically, as to Webb, the

City avers that she was detained on warrants from Maplewood and another

municipality and thus would have been detained regardless of Maplewood's bond.

The City also contends that by posting the Maplewood bond, Webb demonstrated

that she was not truly indigent.  As to Yates, the City proffers that his bond was in fact reduced by the municipal judge, which satisfied the indigency review requirement, and that he was released after posting the reduced bond.  As with Webb, the City contends that Yates' ability to post bond shows that he was not truly indigent.  Finally, the City contends that Lemicy was released without posting bond, which it claims goes against plaintiffs' theory that persons are held for the purpose of extracting bond monies.

The City misses the mark on plaintiffs' theory of liability for this Class.

The periods of detention for these three named plaintiffs ranged from 3 hours to more than 44 hours.  Regardless of these varied durations and the plaintiffs' eventual release with or without payment of bond, it is the *fact* of their detention without *any* consideration given to their ability to pay to secure their release that is the thread that connects the legal and remedial theories of plaintiffs and the putative class members.  And the City's established policy, practice, or procedure of not considering a person's ability to pay *at all* renders the presumptively reasonable 48-hour period of detention meaningless.  As described by plaintiffs' counsel at the hearing, the policy of holding these persons without inquiring into their ability to pay served the City's purpose of extracting any monies it could before releasing them – whether it be full bond after 3 hours or a reduced bond or no bond as the 48-hour mark approached.  The City held these

persons as long as it could until either they could scrounge up some money for
bond or an arbitrary decision had to be made to release them without payment of
bond.  Accordingly, as plaintiffs' counsel averred at the hearing, the delay in
releasing these persons was merely for delay's sake.  Given this alleged purpose
for keeping these persons in jail – whether it be for one hour after booking, 7
hours, or 47 hours and 59 minutes – this detention is not "reasonable" as the City
argues.

I conclude that plaintiffs Webb, Yates, and Lemicy satisfy the typicality and
adequacy criteria of Rule 23(a) and are suitable Class Representatives for this
Class.

Rule 23(b)(3) Requirements

As with the Paid Fines Class, the parties' primary disagreement for Rule
23(b)(3) certification of the Jailed Class arises under the predominance inquiry.
The City raises no challenge to the superiority element as to this Class.

I agree with plaintiffs that the City's liability for the alleged violations of
plaintiffs' constitutional rights can be established through common proof,
including municipal court records, jail records, revenue records, and testimony of
municipal employees.  While the City contends that no records exist to definitively
show whether or not indigency inquiries were made, plaintiffs contend that that is
precisely the point:  at no time were indigency hearings *ever* held as to *any*

individual.  And to the extent the City argues that such hearings have been

conducted since September 2017, plaintiffs contend that court records, employee

testimony, and other evidence show that the City's processes continue to lack the

procedural safeguards constitutionally required on an ability-to-pay inquiry.

Because the existence of the City's policies and processes are subject to common

proof, the question of whether they pass constitutional muster can be determined

on a class-wide basis.

The City argues, however, that the individual circumstances unique to each

Class Representative's detention as described above (such as length of detention

and terms of release) support a conclusion that putative class members likewise

have unique circumstances, which would require individual inquiries to determine

Class eligibility, thereby predominating over any common issue to be resolved.  I

agree with the City that these circumstances – the amount of class members'

bonds, whether they paid their bonds, and how long they were detained – are

indeed unique to each individual.  But the underlying questions are the same:

Were the class members detained for failure to pay bonds or fines without an

inquiry into their ability to pay?  Was it the City's policy to hold detainees without

an indigency inquiry until such time as bonds were paid?  Was the purpose of this

policy to extract monies in any amount from detainees?  As discussed above, it

does not matter if this detention was for an hour, a day, or a week.  Nor does the

amount of the bond matter.  Nor does it matter if the bond was paid in full, was reduced, or not paid before release.  Any period of detention based solely on a failure to pay without an inquiry into indigency is a common question subject to common proof.  Municipal records can show the amount of bond, whether it was paid, and the length of detention.

And through their economics expert, Dr. William Rogers, plaintiffs proffer common proof of the value of being free from detention on an hourly basis.[8] Accordingly, although individual class members may be entitled to a different amount of damages, the damages can be measured using common means.  Because this model for calculating damages is linked to plaintiffs' theory of liability and is applicable to all members of the Class, individual assessments of damages do not erode Rule 23(b)(3)'s predominance factor.

Finally, although not challenged by the City, I find certification of this Class to be superior to other methods of adjudication.  The Class includes thousands of plaintiffs, and class certification will allow for the resolution of their claims in a single forum.  The Class consists of indigent persons who were detained on a set bond for failure to appear or for failure to pay on minor ordinance violations.  It is unlikely that many if not most of these individuals would ever commence litigation

---

[8] A separate order is entered today denying the City's motion to exclude the expert report and testimony of Dr. Rogers.

on their own behalf to vindicate their rights.  "It is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Betances*, 304 F.R.D. at 432 (internal quotation marks and citations omitted).

Plaintiffs have met their burden of showing that the Jailed Class satisfies the requirements of Rule 23(a) and (b)(3).  I will therefore certify the Class under Rule 23(b)(3) and appoint named plaintiffs Webb, Yates, and Lemicy as Class Representatives.  Plaintiffs' request to certify this Class under Rule 23(b)(2) for injunctive relief is addressed below.

### The Narrowed Paid Fines Class and the Jailed Class – Rule 23(b)(2)

Plaintiffs request Rule 23(b)(2) class certification for the Narrowed Paid Fines Class and the Jailed Class, seeking injunctive relief in the form of individualized hearings to determine a person's ability to pay, with such hearings to occur prior to assessments of fines, impositions of warrant bonds, and/or incarceration or the threat of incarceration for nonpayment.  The City argues that the putative Classes' request for injunctive relief is moot given the 2016 passage of Missouri Senate Bill 5 (Mo. Rev. Stat. § 479.360) and Revised Missouri Supreme Court Rule 37, which require municipal courts to, *inter alia*, conduct the indigency hearings plaintiffs request and to conduct them no later than 48 hours after arrest.

While counsel for the City averred at the April 19 hearing that the City implemented the changes when Senate Bill 5 was passed, they later stated that the City actually did not change the way hearings were conducted until 2017. Regardless, plaintiffs contend that despite the new State law mandate, the City's purported indigency hearings remain constitutionally inadequate, thereby necessitating the requested injunctive relief for constitutionally adequate hearings.

A class may be certified under Rule 23(b)(2) when the primary relief sought is declaratory or injunctive. *Avritt*, 615 F.3d at 1035. Such a class may be maintained if –

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2). This Court has held that Rule 23(b)(2) certification is appropriate for a class comprised of arrestees "detained because they are unable to pay bail" and who "seek a declaration on the lawfulness of Defendants' practices and injunction requiring Defendants to conduct hearings in accordance with due process, not flawed by this infirmity." *Dixon*, 2021 WL 616153, at *5. Indeed, a Rule 23(b)(2) class "has been frequently used, and approved, in cases challenging relatively short periods of detention or detention of those with conditions yet to be ascertained, such as disability or indigence." *ODonnell v. Harris Cty., Tex.,* Civil Action No. H-16-1414, 2017 WL 1542457, at *3 (S.D. Tex. Apr. 28, 2017) (citing

*Gerstein v. Pugh*, 420 U.S. 103, 110-11 (1975), and other cases).

Plaintiffs claim that under its policy before purportedly implementing Senate Bill 5 in 2017, the City purposefully did not provide any form of indigency hearing to any person before imposing a fine or setting a bond, and detained persons for failure to pay the fine or bond for periods of hours or days without determining their ability to pay, thereby resulting in persons being coerced into paying unlawfully imposed fines or bonds in order to avoid continued and/or future detention. Plaintiffs contend that after the City's purported implementation of Senate Bill 5, the City continued to provide inadequate hearings that resulted in the same constitutional deprivations described above, that is, setting fines or bonds without a proper determination of ability to pay, detaining persons for failure to pay without a proper determination of ability to pay, resulting in coercion of persons to pay unlawfully imposed fines or bonds in order to avoid detention. Because a single injunction or declaratory judgment requiring constitutionally adequate determinations of a person's indigency would provide relief to each member of the respective Classes, Rule 23(b)(2) applies. *Dukes*, 564 U.S. at 360.

I am mindful of "'the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law,'" *Ahmad v. City of St. Louis*, 995 F.3d 635, 645 n.5 (8TH Cir. 2021) (quoting *Rizzo v. Goode*, 423 U.S. 362, 378 (1976)), as well as the "'rebuttable presumption that the

objectionable behavior will not recur'" when the defendant is a government actor and has taken steps to remedy the alleged wrong, *id.* At 645 (quoting *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006)); *see also Walker v. City of Calhoun, GA*, 901 F.3d 1245, 1270 (11th Cir. 2018).  But the plaintiffs here do not challenge the State law or claim that the City's purported compliance with it will be short lived.  To the contrary.  The claim here is that the City failed and continues to fail to abide by its constitutional mandate to provide adequate hearings on a person's ability to pay, *despite* the State's enactment of Senate Bill 5.  In other words, the objectionable and unconstitutional behavior never abated.  It continues.  *Cf. Walker*, 901 F.3d at 1270 (in determining whether claim of government's alleged illegal conduct is moot, court to consider "whether the government has consistently maintained its commitment to the new policy or legislative scheme.") (internal quotation marks and citation omitted).  And plaintiffs have shown that a class-wide injunction may be the only way to ensure the City's compliance with its constitutional duties.

I will grant Rule 23(b)(2) certification to the Narrowed Paid Fines Class and the Jailed Class, as defined below.

## Conclusion

For the foregoing reasons, the putative Injunctive Class, as redefined, is appropriate for certification under Rule 23(b)(2).  The putative Narrowed Paid

Fines Class and Jailed Class, as redefined, are appropriate for certification under Rule 23(b)(2) and Rule 23(b)(3).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Class Certification [144] [145] is **GRANTED** in part and **DENIED** in part as set forth above.

**IT IS FURTHER ORDERED** that named plaintiffs Cecelia Roberts Webb, Darron Yates, Anthony Lemicy, and Frank Williams are appointed as Class Representatives to represent the <u>Injunctive Class</u>, defined as follows:

> All persons, whether or not such person has ever been jailed, who have paid or currently owe warrant bonds to the City of Maplewood arising from cases in the Maplewood court.

**IT IS FURTHER ORDERED** that named plaintiffs Cecelia Roberts Webb and Darron Yates are appointed as Class Representatives to represent the <u>Narrowed Paid Fines Class</u>, defined as follows:

> All persons who paid to the City of Maplewood fines, costs, and/or fees that were assessed without an inquiry into their ability to pay, *and* who paid such fines, costs, and/or fees after being arrested and jailed on Maplewood municipal warrants issued for failure to pay or for failure to appear.

**IT IS FURTHER ORDERED** that named plaintiffs Cecelia Roberts Webb, Darron Yates, and Anthony Lemicy are appointed as Class Representatives to represent the <u>Jailed Class</u>, defined as follows:

> All persons who have been jailed by the City of Maplewood for nonpayment of fines, fees, costs, or surcharges, including warrant

bonds arising from cases in the Maplewood court, and who (1) were not provided an opportunity to prove indigence prior to jailing; (2) were not considered a danger to the community by notation in Maplewood's file; and (3) were not designated as a flight risk at the time of jailing.

**IT IS FURTHER ORDERED** that John Waldron, Nathaniel Carroll, and Blake Strode of ArchCity Defenders, Inc., 440 N. 4th Street, Suite 390, St. Louis, Missouri  63102; Andrea R. Gold of Tyco & Zavareei LLP, 1828 L Street NW, Suite 1000, Washington, DC  20036; and Ryan Keane of Keane Law LLC, 7777 Bonhomme Ave., Suite 1600, St. Louis, Missouri  63105, are appointed as Class Counsel.

**IT IS FURTHER ORDERED** that the Court will initiate a telephone scheduling conference on **<u>Friday, December 17, 2021 at 10:00 a.m.</u>**  Counsel should dial **888-684-8852** then when prompted enter access code: **4362059**.  The parties must meet and confer and file a **joint proposed scheduling plan** no later than **December 10, 2021.**

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of November, 2021.

- 41 -