UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CECELIA ROBERTS WEBB, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:16 CV 1703 CDP |
| | ) | |
| THE CITY OF MAPLEWOOD, MISSOURI, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The parties in this civil rights class action move to exclude the reports and testimony of the other side's damages-related economics expert under Rule 702, Federal Rules of Evidence, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). For the reasons that follow, I will deny the defendant's motion and deny in part and grant in part the plaintiffs' motion. A separate order is entered today ruling plaintiffs' motion for class certification. The factual and procedural background of the case is set out in that order and will not be repeated here.

Plaintiffs have designated Dr. William Rogers, an economist from John Ward Economics, to testify to the measure of economic damages sustained by a person unlawfully detained. Rogers proffers two methods to measure such damages: 1) the Market Hourly Price Valuation, which is measurable as the hourly market compensation rate that a city must pay to staff its jails with jailors; and 2)

the Value of Statistical Life (or Willingness-to Pay) valuation, which is measurable as the amount that persons are willing to pay to be able to perform their activities of daily living without impediment. Although defendant City of Maplewood does not challenge the validity of these methods in calculating economic damages in general, it argues that the methodologies are inapplicable in a class action brought under 42 U.S.C. § 1983 for unlawful detention, given that damages in a § 1983 action are intended to redress personal injury and are necessarily individual in nature. The City also contends that plaintiffs seek to apply these methodologies to measure the value of hedonic damages, that is, the loss of enjoyment of life, and that economic principles cannot apply to such damages. The City therefore moves to exclude Rogers' expert report and testimony.

The City's proffered expert, Dr. Thomas R. Ireland, is an economics professor at the University of Missouri-St. Louis. In his report, Ireland criticizes Dr. Rogers for his attempt to assign an economic value to the loss of enjoyment of life, or hedonics. Ireland contends that the intangible, non-economic nature of hedonics cannot be measured using economic theories, and that several courts have barred purported expert testimony attempting to measure hedonic damages. In his report here, Ireland accuses Rogers of providing "would-be expert guidance" that is based on pure speculation and is "puffed up" by a list of "irrelevant references to arcane publications." Ireland contends that Rogers' opinion is not based on

economic expertise but instead was formed only to "pander to a jury." (*See* ECF 159-4, Ireland Report.) Arguing that Ireland's criticisms are based on false assumptions and his own personal opinions instead of any expertise, plaintiffs move to exclude Ireland's expert report and testimony.

**Legal Standard**

"Expert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue." *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 865 (8th Cir. 2010) (internal quotation marks and citation omitted). This Court must act as a "gatekeeper" to "insure that the proffered expert testimony is both relevant and reliable." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) (internal quotation marks and citation omitted); *see also Daubert*, 509 U.S. at 589. The purpose of motions to exclude expert testimony is to ensure that only reliable and relevant expert testimony is presented to a jury. *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012).

Federal Rule of Evidence 702 provides the standard for this Court's admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[1] A party's mere disagreement with an expert's assumptions and methodologies does not warrant exclusion of that expert's testimony. *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012). If a party thinks other assumptions and methodologies are more appropriate, it may make this apparent through cross-examination and its own expert witnesses. *Id.* "[Q]uestions of conflicting evidence must be left for the jury's determination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 930 (8th Cir. 2001) (internal quotations marks and citation omitted).

I have substantial discretion in determining whether expert testimony should be allowed. *Russell*, 702 F.3d at 456. If I am satisfied with the expert's knowledge, skill, experience, training, or education, and the expert's testimony is reasonably based on that expertise, admitting the testimony is not an abuse of discretion. *Daubert*, 509 U.S. at 588-91; *Weitz Co. v. MH Washington*, 631 F.3d 510, 527 (8th Cir. 2011).

Although I should resolve doubts regarding an expert's testimony in favor of admissibility, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006), it is well settled that I may not permit an expert to offer an opinion on legal issues involved in a case. *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905

---

[1] Neither side challenges the qualifications of the other's expert as to their ability to provide expert opinions on economics.

(8th Cir. 2005). Nor may an otherwise qualified expert simply offer conclusory opinions without providing a basis for the conclusions. *See Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 826-27 (D. Minn. 2011), *cited approvingly in Jaycox v. Terex Corp.*, No. 4:19-CV-02650 SRC, 2021 WL 2438875, at *4 (E.D. Mo. June 15, 2021). Finally, an expert may not testify on a question that the jury is capable of understanding and deciding without the expert's help. *See American Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015).

**Discussion**

Persons who are subject to unlawful incarceration are deprived of their liberty and are entitled to compensatory damages. *Betances v. Fischer*, 403 F. Supp. 3d 212, 231 (S.D.N.Y. 2019). General damages for loss of liberty may be, and indeed have been, calculated on a class-wide basis. *See Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015).

> "The damages recoverable for the loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering. . . ." General damages for the loss of liberty "'need not be specifically proved—it may be inferred from the circumstances of the arrest or imprisonment' and 'would include at least the value of the time lost by the plaintiff during the period of detention.'" Thus, these damages do not turn on any individual characteristics of any class members.

*Id.* (quoting *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir. 2004) (quoting

McCormick, *Handbook on the Law of Damages*, § 107 at 376)). *Cf. Orvis v. Spokane Cty.*, 281 F.R.D. 469, 475 (E.D. Wash. 2012) (court-approved § 1983 class-wide settlement providing for payment of *per diem* rate for each day that a class member was incarcerated without judicial inquiry into ability to pay); *McFarlane v. Carothers*, No. 4:15-cv-00176-SEB-DML, 2017 WL 9533071, at *7 (S.D. Ind. Feb. 9, 2017) (methodology for determining damages in § 1983 class action alleging unconstitutional detention can be addressed as case develops); *Covington v. Wallace*, No. 2:12-cv123-DPM, 2014 WL 5306720, at *2 (E.D. Ark. Oct. 15, 2014) (in certifying Rule 23(b)(3) class in § 1983 action, court found that *per diem* rate for number of days each class member was unlawfully detained appeared "both fair and legally adequate" in measuring damages); *Moffitt v. Johnson*, No. 4:05CV00963 JLH, 2007 WL 2904004, at *8 (E.D. Ark. Oct. 2, 2007) (court-approved class-wide settlement provided for assessment of monetary damages through points formula based on time spent in over-detention, with each point valued at $125). I therefore disagree with the City's assertion that damages for time spent in unlawful detention cannot be awarded on a class-wide basis in a § 1983 action.

The plaintiffs here proffer two economic methodologies by which to measure the value of time lost by persons during periods of unlawful detention: the Market Hourly Price Valuation, and the Value of Statistical Life/Willingness-to

Pay Valuation. Neither the City nor its expert, Dr. Ireland, challenges these methodologies themselves, only their application to plaintiffs' claims of unlawful detention under § 1983. Specifically, the City and Ireland contend that plaintiffs' claim for damages for time spent in detention is actually a "loss of enjoyment of life" claim, which cannot be measured economically and thus cannot be calculated using the economic methodologies proposed by Dr. Rogers. Also, because quality of life is unique to each individual and cannot be bought or sold in the marketplace, the City and Ireland contend that no economic methodology of *any* kind can be used to measure this hedonic value and that a jury must rely on its own experience and common sense to determine whether a value can be assigned. Ireland avers in his report that he has reviewed, studied, and written about several court opinions from which he has concluded that purported expert testimony about hedonic damages is not admissible at trial. He therefore concludes that Rogers' opinions are likewise not admissible here.

*Daubert* recognizes a distinction between issues that a trial court must decide and issues for a jury to determine after opposing counsel has been provided the opportunity to cross-examine an expert regarding his conclusions and the facts on which they are based. As to the issues for the trial court to decide, I am limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying the testimony is sound. I must focus "solely

on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. My role is not to determine whether the opinions are correct. *Bonner*, 259 F.3d at 932. The question of whether the expert is credible or his theories are correct given the circumstances of a particular case is a factual one that is left for the jury. *Id.*; *A.H. v. St. Louis Cty.*, No. 4:14-CV-2069 (CEJ), 2016 WL 4269548, at *3 (E.D. Mo. Aug. 15, 2016).

"Hedonic damages," as that term is used in litigation, are damages that "attempt to compensate a victim for the loss of the pleasure of being alive[.]" *Families Advocate, LLC v. Sanford Clinic N.*, No. 16-CV-114, 2019 WL 1442162, at *1 (D.N.D. Mar. 31, 2019), *quoted approvingly in Lessert v. BNSF Ry. Co.*, 476 F. Supp. 3d 926, 950 (D.S.D. 2020). And the City is correct that expert testimony on calculating the value of hedonic damages is generally not allowed. But in this case, plaintiffs expressly disclaim any attempt to place an economic value on hedonic damages. They contend instead that Dr. Rogers uses acceptable, recognized, and reliable economic methodologies to calculate the value of time itself and, particularly in this case, the value of a person's time spent in jail – which plaintiffs argue is distinct from measuring the enjoyment of life. (*See* ECF 159 at p. 12.) The City's challenge to Rogers' application of these methodologies to the facts of this case affects the weight of Rogers' testimony, not its admissibility, and may be addressed on cross-examination. The City may not,

however, conduct its cross-examination in such a manner as to elicit an opinion from Rogers on the legal issue of whether the damages he attempts to measure are "hedonic" rather than for the value of time. I will deny the City's motion to exclude the expert report and testimony of Dr. Rogers.

I will also deny plaintiffs' motion to exclude the expert report and testimony of Dr. Ireland to the extent plaintiffs seek to exclude his opinions *in toto*. Plaintiffs' characterization that Ireland provides only personal and not expert opinions in response to Dr. Rogers' opinions is understandable, especially given Ireland's admission that he did not review the materials or references cited by Rogers, as well as his appearing to use a strategy of condescension in attempting to persuade the Court that all of Rogers' opinions are unreliable and not appropriate in litigation. That being said, Ireland does refer to his own economic background and expertise as the basis upon which he disagrees with Rogers' application of otherwise sound economic principles to the facts of this case. The reasonableness of Ireland's criticisms of Rogers' analysis and methods of calculation is a matter for the jury's consideration in weighing the evidence. *See Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005).

However, the admissibility of Dr. Ireland's opinions is not without limitation. Ireland is not qualified to render an opinion as to what he believes is Dr. Rogers' intention in using economic methodologies in this case or Rogers'

motivation in the selection of certain publications and references to support his opinions. Any testimony in this regard is therefore barred. *See Hallmark Cards Inc. v. Monitor Clipper Partners, LLC*, No. 08-0840-CV-W-ODS, 2012 WL 3047308, at *6 (W.D. Mo. July 25, 2012) ("experts cannot offer opinions regarding historical facts or matters of intent, motivation, or other thought processes"); *Amica Mut. Ins. Co. v. Willard*, No. 4:07CV1745 DDN, 2009 WL 2982902, at *5 (E.D. Mo. Sept. 14, 2009) (expert may not testify in a fashion that characterizes a person's state of mind).

Nor is it appropriate for Dr. Ireland to draw legal conclusions or opine on his interpretation of the law. *See In re Genetically Modified Rice Litig*., 2010 WL 2326036, at *5 (E.D. Mo. June 7, 2010). Ireland is therefore barred from testifying in any manner as to his "opinion" that Rogers' testimony is inadmissible and will be unhelpful to the jury. *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (expert testimony on legal matters is inadmissible and intrudes on Court's role to instruct the jury as to the law); *Betances v. Fischer*, No. 11-CV-3200 (RWL), 2021 WL 1534159, at *4 (S.D.N.Y. Feb. 23, 2021).

Finally, I will also exclude Dr. Ireland's opinion that "there are many people who are poor enough that they would probably readily volunteer to be incarcerated for a period of time if paid . . . ." (ECF 159-4, Ireland Report at p. 4.) Ireland

provides no basis for this crass and conclusory statement.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant City of Maplewood's Motion to Disqualify and Exclude the Report and Testimony of Dr. William Rogers and John Ward Economics [153] is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' Motion to Exclude the Report and Testimony of Dr. Thomas R. Ireland [152] is **DENIED** to the extent plaintiffs seek to exclude Dr. Ireland's report and testimony *in toto*, but **GRANTED** consistent with the limitations set out in this Memorandum and Order.

Catherine D Perry
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of November, 2021.